ELISHA HIBBARD *v*. WILLIAM EASTMAN & GEORGE MORRISON.

An agreement to discharge a debtor on receiving a certain promissory note within a time named, may be regarded as taking effect upon delivering such note, and not an agreement to give a discharge at a future time.

Where a creditor who had brought a suit against the maker of a note to recover the amount of it, afterwards agreed that he would discharge the debtor on receiving a certain note within a time limited, retaining, however, his security by mortgage for the same debt, and although the note was duly delivered, the creditor entered his action, took judgment, and was about to enforce it, it was *held* on demurrer to a bill in equity for an injunction and other relief, that the debtor could not have set up this discharge as a defence to the suit at law, and that equity might properly interfere by injunction.

Any fact, which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or he was prevented from so doing by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of equity.

THIS is a bill in equity, and the hearing is on a demurrer to the bill. The pleadings are sufficiently stated in the opinion of the court.

*Chapman & Felton*, for plaintiff.

*Hibbard*, for defendants.

BELLOWS, J. The substance of the statements in the bill is, that the defendant, Eastman, having, on the fifteenth day of February, 1866, brought a suit against the complainant upon his three promissory notes of $50 each, secured by a mortgage of a tract of land, the parties met on the next day and made an agreement which was reduced to writing and signed by said Eastman, by which he agreed that if the complainant should, between that time and the next Monday night, bring him George W. Mann's note for $85, payable in six months, he would discharge the complainant from any farther liability on account of said notes, the said Eastman still to hold his claim upon the mortgage.

That accordingly on the next Monday morning, the complainant delivered to the said Hibbard the note of said Mann, for $85, duly stamped in full compliance with the terms of said agreement; and that the said $85 note has never been returned or offered to the complainant; and yet the said Eastman, regardless of his agreement and discharge, entered his said action at the March Term of the Supreme Judicial Court in the county of Grafton, and at the September Term obtained judgment therein, the said Hibbard being advised and made to believe that he had in law no defence, because his said agreement and discharge was not in law a full accord and satisfaction of said notes, nor a payment thereof.

That, contrary to equity, the said Eastman has caused execution upon said judgment to be issued for $299.73 damages, and $18.06 costs of suit, and has committed it to said Morrison for levy and collection, and the said Morrison has seized upon it the complainant's personal property and advertised it for sale to satisfy that execution.

Wherefore the complainant prays for a perpetual injunction to restrain the collection and enforcement of said judgment, and for general relief.

The demurrer assigns for cause that complainant has an adequate remedy at law, and might have set up the matter alleged, as a defence to said Eastman's suit, of which the complainant had due notice; and no other cause has been assigned at the hearing.

The question, then, is, what is the case stated in the plaintiff's bill, and has he, or had he, an adequate remedy at law? could he have set up the facts alleged in defence to the suit at law, and ought he to have done so?

The substance of the case stated, is, that, after this defendant, Eastman, had brought his suit at law, he agreed to discharge this plaintiff from his personal liability on the notes sued, retaining his security by the mortgage; but that in violation of this agreement he prosecuted his suit at law, obtained judgment, and is attempting to enforce it by execution.

The general principles which govern cases of this sort, are well settled. There is no doubt that courts of equity may, and often do, interpose to stay proceedings at law while pending, to stay judgment after a verdict, and to stay execution after a judgment; or, if execution has taken place, to stay the money in the hands of the sheriff; and it is laid down as a general rule which governs the exercise of these powers, that whenever a party by fraud, accident, or otherwise, has an advantage in

proceeding in a court of ordinary jurisdiction, which must necessarily make that court an instrument of injustice, a court of equity, to prevent a manifest wrong, will interpose by restraining the party whose conscience is thus bound, from using the advantage he has improperly gained. 1 Madd. Ch. 131, 132, citing Redesdale's Tr. Pl. 103.

In *Marine Insurance Company* v. *Hodgdon*, 7 Cranch 332, *Marshall, C. J.*, lays down this doctrine, "that without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud, or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery."

"On the other hand, it may, with equal safety, be laid down as a general rule that a defence cannot be set up in equity which has been fully and fairly tried at law, although it may be the opinion of that court that the defence ought to have prevailed."

This doctrine is fully sustained by *Chancellor Kent* in *Duncan* v. *Lyon*, 3 Johns. Ch. 356, where he says "a party will not be aided after a trial at law, unless he can impeach the justice of the verdict by facts, or on grounds of which he could not have availed himself, or was prevented from doing it by fraud or accident, or the act of the opposite party, unmixed with negligence or fault on his part."

In *Foster* v. *Wood*, 6 Johns. Ch. 90, it is held that equity will not relieve against a judgment at law, because it is contrary to equity, unless the party was ignorant of the fact relied upon while the suit was pending, or it could not be used as a defence at law; or unless he was prevented from setting it up by fraud, or accident, or the act of the opposite party, unmixed with fault or negligence on his part. So is *Lansing* v. *Eddy*, 1 Johns. Ch. 49; *Smith* v. *Lowry*, 1 Johns. Ch. 320; and *Dodge* v. *Strong*, 2 Johns. Ch. 228.

If a party has not used due diligence in setting up such defence at law, relief will ordinarily be refused in equity. *Barker* v. *Elkins & al.*, 1 Johns. Ch. 465; *Titcomb* v. *Potter*, 2 Fairf. 225; 1 Madd. Ch. 130, and notes.

The authorities illustrating these doctrines are very numerous. In 2 Story's Equity Jur. sec. 879, it is laid down, that if a judgment is obtained at law because the defendant cannot find a release which he has, but he afterwards finds it, a court of equity will grant a perpetual injunction.

So it is held in *Gainsborough* v. *Gifford*, 2 P. Wms. 424. So if a judgment is obtained by fraud for a larger sum than is due, upon a mutual understanding that certain set-offs should be allowed, equity would enjoin the judgment to the extent of the set-offs; and so if a party was surprised at the trial by a claim of which he had no notice. 1 Story's Equity Jur. sec. 880. So, in a case of such surprise, an injunc-

tion was granted in *Bell* v. *Cunningham*, 1 Sumner 89 ; 1 U. S. Eq. Dig. sec. 139.

In *Briggs* v. *Law & al.*, 4 Johns. Ch. 22, it was held, that, where, in giving a judgment bond, it was agreed that the creditor should enforce it ratably, but the creditor took out execution against a part only, equity would enforce the agreement by injunction.

In *Miller* v. *McCarr*, 6 Paige Ch. 451, an injunction was granted to restrain the enforcing of a judgment against a surety upon the ground that he had been discharged by giving time to the principal, it appearing that the surety could not set up this defence at law, because the facts were known only to the parties, and therefore could not be proved.

So equity will restrain the enforcing of a judgment that has been satisfied. 2 Story's Equity sec. 875. So equity will restrain the enforcing of a judgment against a school district obtained upon default, for the wages of a schoolmaster, who had not the necessary certificate ; the application being by tax-payers, and the court holding that they were not bound by the judgment, which might be regarded as collusive. *Barr* v. *Dinsmore*, 19 N. H. 170.

So where judgments are obtained by fraud, equity will interpose. *Bellows* v. *Stone & al.*, 14 N. H. 203. So equity will restrain the enforcing of an award obtained by fraud. *Rand* v. *Redington*, 13 N. H. 72.

In the case before us, if the agreement is not to be regarded as taking effect at once on the complainant's furnishing Mann's note, as a discharge of his personal liability, but merely as a promise to give such discharge at a future time, the bill will lie for a specific performance.

If it is to be regarded as a present discharge, or agreement not to prosecute when Mann's note was delivered, then other questions arise. The terms are, that, on delivering Mann's note at a time named, "I agree to discharge said Hibbard," &c., and although they might bear the construction that a discharge was to be given at a future time, yet, taking all the circumstances into consideration, we think it is to be understood as a discharge from the delivery, an acceptance of the note. This construction is fully warranted by the cases of *Gibbons* v. *Vouiller*, 8 M. G. & S. 483, and *Tuckerman* v. *Newhall*, 17 Mass. 581. In this last case, although the language was in the future tense, that he would discharge and release, yet it was held that it would operate as a present release, because it was manifest from the whole instrument that such was the intent, the court holding that if a man covenant that he will release a right, it ought to take effect immediately as a release, unless there are words showing a different intention.

The question then arises, whether this agreement could have been used to defeat the action at law. If it is to be construed as a release of the debt it might have been so used ; but it is apparent that such was not the intention. The security by way of the mortgage was still to be retained, and for that purpose the debt must be upheld ; the personal liability only of the complainant was to be discharged. It must stand, therefore, upon the footing of an agreement not to sue, nor to prosecute the suit already commenced. This agreement could have been enforced

in equity by an injunction against the prosecution of the suit at law; but it could not have been pleaded in bar of the further maintenance of that suit, for, as we have seen, the debt was not released.

In the case of *Parker* v. *Holmes*, 4 N. H. 97, which was much like this in substance, it was held that the agreement, even if under seal, could not be regarded as a release, for that would be a discharge of the mortgage, nor could it be regarded as a release of the right to sue without discharging the debt, and the remedy must be on the contract. The court liken it to a covenant not to sue, but say that such a covenant is not a bar, except when it can be considered a release, and that it could not be so considered when it is a covenant not to sue one of several promissors; and the court says that if there had been a contract between plaintiff and defendant, under seal, that plaintiff should look only to the mortgage, it would not have been a defence to this suit; so the remedy must have been on the contract.

So is the case of *Jackson* v. *Stackhouse*, 1 Cow. 122, where there was endorsed upon a bond, and signed by the obligee, a release and discharge of the obligor from all liability on the bond, engaging to rely solely on the mortgage given with the bond, as security for the payment of the money, it was held that this could be regarded only as a covenant not to sue the obligor.

The construction we give to this agreement is fully warranted by the construction given to covenants not to sue, which are ordinarily regarded as releases, when there is only one debtor, but not when given to one of several debtors with no purpose to release the others. *Parker* v. *Holmes*, 4 N. H. 98, before cited; *Durrell* v. *Wendell & al.*, 8 N. H. 369; and so it is, even when strong terms of release are used, if, from the whole instrument, the purpose can be gathered of retaining the claim against some of the promissors. 1 Parsons on Con. 28, and cases cited. *Couch* v. *Mills & al.*, 21 Wend. 424, is a strong case of this character.

The same principle must require a similar construction where the creditor retains the security afforded by the mortgage, intending to discharge the personal liability of the debtor; and so is *Parker* v. *Holmes*, and *Gibbons* v. *Vouiller*, 8 M. G. & S., before cited.

The reasonable construction to be given to this instrument is, that it is an agreement not to sue the complainant, or to prosecute the suit already commenced; and we are of the opinion, as before suggested, that the complainant could not have availed himself of the agreement as a defence to the suit at law, simply for the reason that it could not be pleaded as a release, for it was not a release, and in no other mode known to the rules of pleading, could it be available at law as a defence to that suit.

Such is the doctrine of *Parker* v. *Holmes*, before cited, and also of *Dow* v. *Tuttle*, 4 Mass. 414, when, at the giving of a note, it was verbally agreed that the payee should not sue it for a specified time, but it was sued before that time, the court, per *Parsons*, *C. J.*, held this agreement to be no defence; that if valid at all, it must be regarded as collateral to the note; though in equity it would afford good ground for

an injunction.    A similar doctrine was held in *Carey* v. *Bancroft*, 14 Pick. 315, where there was an agreement that a certain claim should be allowed in set-off.    It was decided that this was like an agreement not to sue, executory and collateral, and not affecting the terms of the note, till executed.

It appears from the bill, that notwithstanding the agreement of the defendant, Eastman, not to sue the complainant, nor prosecute the suit already commenced, he did prosecute it, and obtained a judgment for the whole amount of the notes, and is now seeking to enforce it.    If he did this, after accepting the Mann note under the agreement, and without the assent of the complainant, it is manifestly against conscience that he should use the advantage thus gained,· and equity ought to interpose to prevent it.

This is substantially the complainant's case, although, in some respects, imperfectly stated ; yet, as the only ground of demurrer taken is, that there was an adequate remedy at law, we have not been called upon to consider whether the plaintiff's case has not, in some particulars, been argumentatively and defectively stated, so as to require amendment.    His case is substantially what is stated above, and upon that he had no adequate remedy at law ; and as it now appears from the bill, the prosecution of the suit to final judgment, with the intent to enforce it against the complainant personally, contrary to said Eastman's express agreement not to do so, was manifestly against conscience, and calls for the interposition of this court.

Upon further proceedings, it may appear that there was such an assent or acquiescence in this proceeding of the defendant, as to raise the question whether this application is not too late; even although the agreement could not have been set up as a defence at law.    Upon the case stated, however, as we understand it, we think the demurrer must be overruled, and respondent must answer further.