CORNELIUS HANNON, appellant,

*v.*

JOHN MAXWELL, respondent.

In a replevin suit brought by M. against C. H., after a dissolution of his partnership with C. H. Jr., alleging fraud in obtaining the goods replevied, a judgment was given for C. H.   Afterwards, in trover against C. H. Jr. for the same goods (additional evidence of the fraud having been discovered), M. obtained a verdict.   An injunction was thereupon issued, restraining C. H. from further proceedings on a judgment obtained by default, by C. H. against M. and his sureties on the replevin bond.—*Held,* that the injunction ought to have been refused, (1) Because the bill did not show *when* the additional evidence of fraud was discovered, and that it was too late to apply at the same term of court (as required by rule) for a new trial in the replevin suit, and (2) That such evidence was material, relevant and not cumulative.

On appeal from a decree of the chancellor, whose opinion · is reported in *Maxwell* v. *Hannon, 2 Stew. 525.*

This is an appeal from a decree overruling a demurrer to a bill filed to restrain an action at law, and for general relief.   The bill substantially discloses the following case : Cornelius Hannon, the defendant in the suit, was, with his son, Cornelius Hannon, Jr., engaged in buying and selling stone.   On December 15th, 1875, they dissolved partnership, when the son made a pretended purchase of his father's interest in the business, for the consideration of $11,750, giving his own note to his father for that amount. The son thereafter applied to Maxwell, the complainant, and bought four bills of goods (stone), of the dates of September 20th, 1876, September 27th, 1876, October 14th, 1876, and October 17th, 1876, respectively, amounting, in all, to the sum of $4,116.35.   This stone was taken to the yard of the son.   On the 14th of October, 1876, the son executed a chattel mortgage to his father, on all his property, except the coal then on hand, to secure the payment of $3,000.

Hannon *v.* Maxwell.

On the same day, the father brought an action on the note for $11,750, judgment was duly entered, and a levy was made upon all the son's property on November 18th, 1876, the day after the last bill was purchased from Maxwell.

Maxwell, believing that the chattel mortgage, the judgment and the purchase of the stone was a plan devised to defraud him, brought an action of replevin against the sheriff, which was tried at the Essex court, at the April term, and resulted in a verdict for the sheriff, and against Maxwell, because Maxwell was unable to prove the facts which he supposed to exist, and, at the trial, the Hannons produced a schedule of the firm property at the time of dissolution, which showed the consideration of the note to be $11,750, and the son swore that he had since lost $7,000 by endorsements and loans made to one William R. Drake.

About the same time, an action of trover was brought by Maxwell against Hannon (the son) for the same stone, which action was tried at the Essex circuit, at September term, 1877, in which action Maxwell, having obtained further testimony in relation to the transactions between the father and son, was enabled to show, by satisfactory proof, that the note for $11,500 was without consideration; that the schedule was false, as also the story that the son had lost, by the said Drake, $7,000. The verdict was for Maxwell, and against said Hannon.

Cornelius Hannon has brought an action on the bond given in the replevin suit against the sureties thereon, and judgment has been entered by default, and was entered without the knowledge of Maxwell.

The prayer of the bill is, that all proceedings upon this judgment may be enjoined, and for general relief.

*F. W. Stevens,* for appellant.

The appellants, who are the defendants below, have demurred to the complainant's bill, because it fails to show a case over which equity has jurisdiction.

I. It avers that the complainant prosecuted, in the Essex circuit, an action of replevin; that the cause was tried before Mr. Justice Depue and a jury, and that the jury gave a verdict against the complainant. The affidavit annexed to the bill, states that a new trial was sought by complainant, and *denied.* The effort is, to prevent the appellant (the defendant below) from reaping the fruits of the verdict in his favor; but the prayer of the bill does not point out the precise relief sought; it asks for nothing more than a temporary restraining order, and general relief.

II. As the complainant could hardly seek a perpetual injunction (to grant which, the court would have to pass upon the very question which the jury have already considered, and to reverse their finding), we may conjecture that he seeks a *new trial.* This is evident from the fact that the fraud alleged is fraud in the sale of the stone, and not a fraudulent use made of the machinery of the court of law to obtain an inequitable advantage.

III. How little such a proceeding is resorted to in equity appears from *Larabrie* v. *Brown, 1 DeG. & J. *204,* where Turner, L. J., says " such bills (for new trial) appear to have been filed in former times, but I believe no such attempt has been made for the last two or three hundred years." See also *Terrell* v. *Higgs, 1 DeG. & J. *392.*

To succeed, the complainant must show, not merely that the jury were wrong, but some special ground of equity. Otherwise, a trial at law would settle nothing. This *special ground of equity is the great jurisdictional fact* authorizing the court to lay hold of the case.

IV. Now, while conceding that, in very special circumstances, a court of equity may interpose to grant a new trial, the complainant must, it is submitted, show *affirmatively* certain facts, which are of the very essence of his case, viz.:

(1st) That he has newly-discovered evidence, *setting it forth.*

(2d) That such evidence is not cumulative.

(3d) That he could not have availed himself of it at the trial at law, by the exercise of proper care and diligence.

(4th) That he did not discover it till it was too late to apply for a new trial in the ordinary tribunal.

*Cairo & Fulton R. R.* v. *Titus, 12 C. E. Gr. 106,* affirmed, as to the law, in *1 Stew. 269.*

If the bill fail to show *affirmatively one* of these four facts, it is fatally defective; but, in point of fact, it does not show any.

V. The chancellor puts the right to relief on the ground of conspiracy and perjury, but these are no grounds for equitable interference. *Vaughn* v. *Johnson, 1 Stock. 73; Smith* v. *Lowry, 1 Johns. Ch. 320.*

VI. Again, it is respectfully submitted, that the chancellor has failed to discriminate between such frauds as a court of equity may take cognizance of, and such as are within the exclusive jurisdiction of a court of law. Says the master of the rolls, in *Harrison* v. *Nettleship, 2 Myl. & K. 423:* "A court of equity has no jurisdiction to relieve a plaintiff against a judgment at law, where the case in equity proceeds upon a ground equally available at law and in equity, unless the plaintiff can establish some special equitable ground of relief."

VII. The complainant is not entitled to relief for another reason. He alleges, *that he recovered judgment against C. Hannon, Jr., in trover,* for the value of the goods delivered to him. This judgment transferred the title to the goods, and vested it in C. Hannon, Jr., and, being so vested, the judgment in replevin must stand.

That the effect of a judgment in trover is to pass the title to the defendant, appears from the following cases in New Jersey: *Wooley* v. *Carter, 2 Hal. 85; Thompson* v. *Morris Canal, 2 Harr. 484; Outcalt* v. *Durling, 1 Dutch. 443, 449.* Such is the law in Pennsylvania (*Fox* v. *Prickett, 5 Vr. 13*), in Rhode Island (*Hunt* v. *Bates, 7 R. I. 217*), and in England, in long series of decisions. *Keilway 58 B; Bruen*

v. *Wotton,* Cro. Jac. *73;* Adams v. *Broughton, 2 Str. 1078;* King v. *Hoare, 13 M. & W. 504;* Buckland v. *Johnson, 15 C. B. 145.* See also *3 Dane's Abr., ch. 77, art. 1, § 2; 1 Chitty Pl. \*89.*

In the note to *2 Kent. Com. \*388,* are some cases which appear to hold that satisfaction of the judgment is also necessary. But even in New York the law does not seem wholly settled. In *Thurst* v. *West, 31 N. Y. 211,* Chief Justice Denio says, a recovery for the conversion would change the property. See also *Bank of Beloit* v. *Beale, 34 N. Y. 473.*

*Mr. Frederick Frelinghuysen,* for respondent.

I. The appeal is not properly before this court.

II. Before the defendants appear before this court, they must purge themselves of their fraud.

III. This court can relieve in just such cases as these.

I. This appeal is not properly before the court.

The order appealed from was interlocutory, that the defendants answer in forty days. The order was entered July 16th, 1878, and notice of appeal therefrom was filed July 24th, 1878; but the petition of appeal was not filed, nor deposit made, until November 2d, 1878. We submit that the filing of the notice of appeal is not such appeal as the statute requires.

An appeal is an act by which a party submits to the decision of a superior court, a case which has been tried in an inferior tribunal. *Leake* v. *Blakely, 34 Vt. 134; Hilliard on New Trials* §§ *700, 703.*

How is such appeal made? By the appellant bringing the case on before the court, by petition and deposit.

*Chancery Rule 121* obliges the appellant from a *final* decree to present his petition of appeal at the next term after filing his notice of appeal; so that, although appeal may be taken from a final decree at any time in three years, it is restricted so that, when once notice of appeal is filed,

the petition must be presented at the next term; there is no such restriction on appeals from interlocutory orders, and, unless the petition be the appeal (for there is no rule directing the proceedings, except that it must be brought within forty days), there is no limit; and surely the petition alone makes the appeal—that alone submits the case to the superior court. The notice of appeal brings nothing before the court so that either the court or the respondent could treat the case. The notice says the appellant appeals. On simply a notice, even on appeal from final decree, where three years are allowed, the court would consider the appeal waived, unless the petition be filed, according to the rules, by the next term.

On an interlocutory order, appeal must be taken in forty days from the filing of the order. *Rev. Chancery,* § *114.*

Appeal from an interlocutory order is statutory entirely —not known at common law. *Hammond* v. *The People, 32 Ill. 441; Ladow* v. *Groom, 1 Den. 429.* There the affidavit was defective in form, and, the statute requiring an affidavit, the appeal was dismissed.

The following have been held interlocutory orders:

Order overruling a plea. *Rutherfurd* v. *Fisher, 4 Dall. 22.* Order refusing to dismiss a bill for want of equity. *20 Ala, 445.* Overruling a demurrer. *Blakely* v. *Fish, Hempst. 11.*

This is a case overruling a demurrer, and appeal was not taken within forty days, and should be dismissed, as was done in *Newark Plank Road Co.* v. *Elmer, 1 Stock. 760.*

II. As to necessity of defendants purging themselves of the fraud.

This is on demurrer to the bill (admitting all the facts), for want of equity in the bill.

A motion to dissolve before answer filed, for want of equity, will not be allowed when the bill charges fraud. *Shotwell, adm'r* v. *Smith, 5 C. E. Gr. 79.* That was a suit enjoining suit at law until discovery of facts was made by defendant, and charging that the obligation sued on at

law was fraudulent. Court refused to dissolve injunction on motion before answer was filed.

The want of equity must be fully and fairly met by the defendant, and everything taken against the defendants which they might have answered. *Park* v. *Spurgin, 3 Ired. Eq. 153 ; High on Inj.* § *882.*

When there are two defendants charged with fraud, the court will require both to answer before dissolving injunction, and require a positive denial from all the defendants before dissolving an injunction granted on the ground of fraud. *High on Inj.* § *914; Price* v. *Clevenger, 2 Gr. Ch. 20 ; Scull* v. *Reeves, 2 Gr. Ch. 84.*

And even if the demurrer is properly considered here, under the general demurrer all the claims in the bill must be overruled. The entire complaint must appear outside of the jurisdiction of the court. *Boston Water Power Co.* v. *Boston & Worcester R. R. Co., 16 Pick. 512 ; Kimberly* v. *Sells, 3 Johns. Ch. 467.*

III. This court can relieve in just such cases as these.

We find in *Story's Eq. Jur.* § *184,* that this court has jurisdiction over fraud which is beyond the reach of the courts of law.

Equity will do it by reason of the inherent authority growing out of the principles of equity, and extending itself over courts of every description. *Van Meter* v. *Jones, 2 Gr. Ch. 520 ; Boulton* v. *Scott, Id. 231 ; Davis* v. *Headley, 7 C. E. Gr. 115 ; Reeves* v. *Cooper, 1 Beas. 223.* Also in cases of concealment or fraudulent representation. *Conover* v. *Wardell, 7 C. E. Gr. 492 ; Stover* v. *Wood, 11 C. E. Gr. 417.*

In *Hoyt* v. *Hoyt, 12 C. E. Gr. 399,* it is held to be the peculiar province of equity to determine such questions of fraud.

A prevalent difficulty in such remedy has been proof of the fraud; here it is demonstrated in the second verdict, and is undenied here on demurrer.

Nor is there any doubt of the authority of equity to look into the judgments of courts of law and set them aside, or restrain them on ground of fraud. *Van Meter* v. *Jones, 2*

Hannon *v.* Maxwell.

*Gr. Ch. 520; Glover* v. *Hedges, Sax. 113; Oakley* v. *Young, 2 Hal. Ch. 453; Powers* v. *Butler, 3 Gr. Ch. 465,* authorities collected. *Moore* v. *Gamble, 1 Stock. 246; Tomkins* v. *Tomkins, 3 Stock. 512; Stratton* v. *Allen, 1 C. E. Gr. 229.* A judgment at law can only be impeached in equity for fraud in its concoction.

Equity originally granted new trials. Now it will not grant new trials when the court of law can do it. *Powers* v. *Butler, 3 Gr. Ch. 465.* If, however, facts could not, for fraud or by rigid rules of law, be used, equity will relieve.

Here new trial cannot be granted by the court of law, and yet the weight of the newly-discovered evidence has been demonstrated by the verdict in trover.

*Cairo R. R. Co.* v. *Titus, 1 Stew. 269,* reverses the decision that relief is refused if the new evidence or the concealment could have been elicited on cross-examination. Still we do not come even within that condition, for we could not elicit it on cross-examination, the two conspirators swearing falsely and persistently.

That case holds that possession and concealment of a contract at the trial by one side, exonerates the other side from laches, even though it might have been brought out on cross-examination. Concealment was enough. Here we have not concealment, but a thousand times worse. We have fraud and conspiracy, covered and hidden by falsehood and perjury. The one case relieves against a failure to disclose, the other against false disclosures and fraudulent conspiracy.

The case of *Henwood* v. *Harris, 12 C. E. Gr. 247,* sustains our position, also. It holds that chancery will stay suits at law, and will do it without remitting to law, where the law proceedings would be summary and result in irreparable injury.

When facts material to establish defence have been discovered since trial, which the defendant could not sooner have discovered with due diligence, or had been fraudulently concealed (by false swearing), relief may be allowed.

*Batzell* v. *Randolph, 9 Fla. 366; Bateman* v. *Willove, 1 Sch. & Lef. 204.*

In cases where cognizance cannot be taken at law, equity will interfere, as where verdict was obtained by fraud, or by which the party has an unconscientious advantage. *Gainsboro* v. *Gifford, 2 P. Wms. 424.*

Sometimes equity relieves where the plaintiff in equity might have protected himself at law, as finding a receipt in full after verdict.

Fraud being shown by which facts were concealed, equity will afford relief by opening the case and allowing new trial, or by perpetual injunction. *Wierich* v. *Dezoya, 2 Gilm. 385.*

That the defence should have been made at law is not good ground for dissolving injunction, where the judgment was obtained through such fraudulent and deceitful misrepresentations as prevented the complainant from gaining his rights in that legal tribunal. *High on Inj.* § *109.*

The defendants claim that, at the replevin suit, Cornelius Hannon, Sr. proved the sale to Cornelius Hannon, Jr., his co-defendant, and the verdict was given in his favor accordingly. They insist that no fraud appeared in the purchase of the stone, and consequently the purchase was good and the sale stood, and, therefore, the execution of Cornelius Hannon against his son properly levied on the stone.

We reply, that subsequent to the finding in the replevin suit, we show the purchase of the stone was fraudulent, and the trial of the replevin suit was likewise fraudulent. We show fraud both in the purchase of the stone and in the trial of the suit, and the trover suit demonstrates it.

But the defendants say the recovery in the trover suit for the full amount of goods estops us from taking any further proceedings. We say the trover and the replevin suit are on the same ground of fraud. When fully shown up, we recover, because the sale was void—void because Hannon & Son had conspired to cheat us, and we claim that they can take no advantage of the fraud we have demonstrated. If the injunction is not retained, they will have an advantage,

Hannon *v.* Maxwell.

through their fraud, of all the goods replevied and for which they now are suing the bond. And this court of equity has cognizance of the fraud, which appears not only in the purchase, but also in the trial.

*Holmes* v. *Steele, 1 Stew. 173,* holds that if defendant had fair opportunity to be heard at law, equity will not enjoin the judgment, on the ground that it is unjust or that the court erred. We do not claim the court erred, but insist that the evidence, which was solely in the breast of the Hannons, has since been demonstrated to be false, and we submit that equity will interfere where defendants had an unconscientious advantage.

Unlike the case of *Holmes* v. *Steele, 1 Stew. 173,* we have not had a fair opportunity to be heard at law, and we do not claim the court erred. We submit we were wronged by the false evidence in the replevin trial, so boldly given and so skillfully concealed that we could not contradict it, and we ask this court to stop the success of their fraud by this injunction, and the court may set off from the trover verdict the amount of the goods replevied.

*Cairo & Fulton R. R. Co.* v. *Titus, 12 C. E. Gr. 102,* even holds that equity will relieve a party against a judgment at law when its justice can be impeached by facts of which he was prevented from availing himself by fraud, but was not proven. This case, we submit, is just such a case, and is demonstrated.

The opinion of the court was delivered by

REED, J.

It is apparent that, in the examination of the facts disclosed in this bill, for the purpose of ascertaining the existence of the equitable relief, if any, growing out of them, we must regard the present as a bill for a new trial. Although there is no specific prayer for this remedy, but, instead, a general prayer for relief, and a special prayer that the proceedings upon the judgment upon the replevin

bond may be enjoined, yet it is manifest that there is no equitable ground disclosed in the bill which would draw the final adjudication of the matter determined by the first verdict, into this court, and so deprive the judgment creditor, not only of the fruits of his verdict as it stands, but of the privilege of retrying it in the original forum. There is disclosed no defence peculiar to courts of equity and unavailable in the common law tribunals. Everything stated in the bill was as pertinent in the trial at the circuit, as a defence, as it could be in any court, and the question then remains, whether the facts disclosed in the bill are such as to entitle the defeated party to a retrial, so that the verdict may be based upon the new and radically different presentation of testimony, which, the complainant claims, will attend a second trial.

The question extends further than this, however, for it is, whether a court of equity will compel such new trial by enjoining the further proceedings upon the present judgment. The rule which restricts the interference of courts of equity with verdicts or judgments, in courts of law, has ever been one of great strictness. Before the courts of common law exercised the privilege of granting new trials, the court of chancery interfered with reluctance, and the suits of this character in the English equity courts are not numerous. The strictness with which these courts adhered to this rule is apparent from a reference to the few cases where the subject has been considered. *Curtis* v. *Smallridge,* *2 Freem. K. B. 175; Tovey* v. *Young, Prec. in Ch. 193; Richards* v. *Symes, 2 Atk. 319; Sewel* v. *Freeston 1 Ch. Cas. 65.*

In *Bateman* v. *Willove, 1 Sch. & Lef. 201,* Lord Redesdale, in the Irish court of chancery, held it to be unconscientious and vexatious to bring into a court of equity a discussion which could have been had at law.

In *Smith* v. *Lowry, 1 Johns. Ch. 320,* Chancellor Kent cites these cases with approval, and, in the case he was then considering, refused to grant an injunction to stay proceedings on a judgment at law, applied for on the ground that

Hannon v. Maxwell.

the defendant was prevented by public business from making due preparation for the trial, and that the defendant had, on the testimony of one witness, whom he had suborned, recovered a verdict for too large damages, and that the supreme court had refused a new trial.

In the case of *Floyd* v. *Jayne, 6 Johns. Ch. 481*, Chancellor Kent again says: "Anciently courts of equity exercised a familiar jurisdiction over trials at law, and compelled successful parties to submit to a new trial or be perpetually enjoined from proceeding on his verdict. But this practice has long since gone out of use, and such a jurisdiction is rarely exercised in modern times, because courts of law are now in the competent and liberal exercise of the power of granting new trials."

In *Larabrie* v. *Brown, 1 DeG. & J. 204*, Lord Justice Turner remarked, that the bill then under consideration was like a bill for a new trial, and that such bills had been filed in former times, but he believed that no such attempt had been made for the last two or three hundred years.

The disuse of such bills results from the fact that, since the relaxation by the common law courts of the rules for the granting of new trials, scarcely any legal ground for a rehearing can now be asserted in the common law tribunals. As courts of law have extended their jurisdiction over this subject, courts of equity have in this instance withdrawn theirs, in accordance with the principle that, where a court of law can furnish an adequate remedy, equity will not interfere.

Now, on turning to the bill in the present cause, it appears that the grounds upon which this application is made is one of which the circuit court, by its well-established practice, could have taken cognizance. The right to set aside verdicts, for fraud, surprise, or newly-discovered evidence, is constantly and liberally exercised by our own common law tribunals. What, then, in the present instance, is the exceptional character of the case to take it out of the rule that equity will not interfere ? The only ground that

Hannon *v.* Maxwell.

can be suggested is, that the evidence was discovered so late that the motion for a new trial could not have been made at the circuit court, because of the existence of a rule that motions for new trials must be made during the term of trial.    Without discussing the force of this rule, whether it precludes the circuit from considering a motion for a new trial based upon the discovery of facts subsequent to the trial term, it is sufficient that the bill does not disclose when the facts here relied on for a new trial came to the knowledge of the defendant.

The bill states that the second action was tried at the September term of the Hudson circuit, in which trial Maxwell, having obtained further testimony in relation to the transactions between the father and son, was enabled to prove certain things, and so gained a verdict.    The bill does not disclose when he obtained this information.    It does not appear that it was discovered after the expiration of the trial term, but, on the other hand, the inference arising from the statements in the bill is, that it was discovered previous to the second trial.    The bill should have clearly disclosed that the application was based upon a matter of which the circuit was powerless to take cognizance.    This it fails to do, and in this respect the bill is demurrable.

The second verdict, of course, could not be used as evidence upon the retrial of the replevin suit.    It was a verdict on an action between different parties, and could not be pleaded in bar or offered in evidence in the action between Maxwell and the sheriff.

There is another ground upon which I think the bill is defective.    Nothing is shown of the nature of the evidence which is alleged to have been newly discovered.    The rule as to the character of the newly-discovered evidence which can be successfully presented as a ground for a new trial, is well settled.    It must be material, relevant and non-cumulative, and such as could not have been discovered in time for use at the first trial by the exercise of proper care and diligence.    The bill should disclose the character of the evi-

dence, so that, from the pleading, the court can determine its materiality and relevancy. The bill should further show that proper diligence was used in the preparation for the first trial, and that the exercise of such diligence failed to discover the testimony, or that, from the character of the testimony or the manner of its subsequent discovery, no proper degree of care would have brought it to light in time for the original trial. This the pleader fails to do. On these grounds, I think the bill is demurrable, and that the decree overruling the demurrer should be reversed, with costs.

Decree unanimously reversed.