This matter is now before the court on the return of an order granted to the complainant on the filing of his bill, requiring the defendant to show cause why an injunction should not issue as prayed for in the bill, enjoining and restraining said defendant, Lillian Henke, formerly Lillian Cookson, administratrix adprosequendum of the estate of Robert Cookson, deceased, from collecting or attempting to collect a certain judgment recovered in the Hudson county circuit court on or about August 6th, 1927, by Lillian Cookson, administratrix ad prosequendum of the estate of Robert Cookson, deceased, against Jacob Simon for $5,000 damages, and interest and costs, and from taking any steps in the said action in the Hudson county circuit court other than to defend an appeal therefrom taken by the complainant, Jacob Simon, to the New Jersey court of errors and appeals. Said order contained an ad interim restraint. The defendant gave to the complainant due notice of a motion to strike the bill of complaint, and said motion is now also before the court for consideration and determination. The motion to strike the bill of complaint is based on several grounds, among which are want of equity, lack of jurisdiction, and that the complainant elected to seek relief from the operation of the judgment in question in the Hudson county circuit court, and thereafter in the court of errors and appeals, and is therefore now estopped from seeking relief in this court.
The prayer of the complainant's bill is that it be decreed that the aforesaid defendant willfully and deliberately misrepresented to the complainant and to the Hudson county circuit court, and to the jury before whom the action against complainant was tried, that she was the widow of Robert Cookson; that her name was Lillian Cookson; that she had not re-married; that said fact was a material fact for the consideration of said court and jury, and that the concealment of said fact from the court and jury had a material effect on the jury in the decision of the said action in said circuit court. And that it be adjudged and decreed that the aforesaid judgment of said court was recovered because *Page 117 
of the said fraudulent representation and deceit upon the part of the said Lillian Cookson, and that the said judgment may be adjudged to be null and void because of the said fraud, and that the said Lillian Henke, formerly Lillian Cookson, may be enjoined and restrained from collecting said judgment or any portion thereof, and from doing anything else in the said action except to defend this cause, and the appeal from said judgment taken by the complainant to the court of errors and appeals, and that the said Lillian Cookson, administratrix ad prosequendum of the estate of Robert Cookson, deceased, may be permanently enjoined and restrained from collecting the said judgment or any part thereof, and may be directed by decree of this court to open the said judgment, or consent to an order setting aside the said judgment, and that this court may decree that the said judgment is null and void because of the fraud alleged against the said Lillian Cookson. Also that the sheriff of the county of Hudson may be enjoined from making payment to the defendant herein of moneys deposited with him by the complainant herein, under circumstances mentioned in the bill of complaint.
The bill of complaint, together with the affidavits filed in behalf of the respective parties to this suit, shows that after the recovery of the aforesaid judgment the defendant was appointed administratrix of the goods and chattels, rights and credits, which were of Robert Cookson, deceased, who died intestate; that the judgment was obtained in an action founded upon the "Death act" (2 Comp. Stat. p. 1904), which authorizes the recovery of damages in a case within the provisions of said act with reference to the pecuniary injuries resulting from death; that the damages awarded in the aforesaid action are declared by the said act to be for the exclusive benefit of the widow and next of kin of said Robert Cookson, deceased, and distributable to such widow and next of kin in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate.
Under the Distribution act, as amended by chapter 63 of the laws of 1918, the moneys to be realized from the judgment *Page 118 
aforesaid are distributable as follows: One-third thereof to the widow of the decedent and the remaining two-thirds thereof to the children of such decedent.
The decedent, Robert Cookson, at the time of his death, left him surviving his widow, Lillian Cookson, and three minor children, James Cookson, Doris Cookson and Lester Cookson, aged one, two and three years, respectively.
I have read and considered the bill of complaint and its supporting affidavits, and the affidavits submitted and filed in behalf of the defendant. I have considered, also, the arguments of counsel for the respective parties, complainant and defendant. The defendant, on June 2d 1926, instituted an action at law as Lillian Cookson, administratrix ad prosequendum of the estate of Robert Cookson, deceased, against the complainant, Jacob Simon. Prior to the commencement of said suit, to wit: on April 10th, 1926, said Lillian Cookson married one Gustav F. Henke. Robert Cookson died August 25th, 1925, as a result of injuries sustained by him on August 23d 1925, attributable to the negligence of the complainant. The defendant herein was appointed administratrix ad prosequendum aforesaid on March 24th, 1926. She was appointed administratrix of the goods and chattels, rights and credits which were of Robert Cookson, deceased, on September 22d 1927.
At the trial of the law action, May 18th, 1927, the defendant herein (the plaintiff therein) was asked by her attorney if she was the widow of Robert Cookson, and as to his age, the date of his death, whether his death was the result of an accident, his condition of health prior to his death, the nature of his employment, the amount of salary he received and contributed to the support of the family, her age, and the names and ages of their children. The attorney for complainant herein (defendant therein) did not ask her any questions whatever. The attorney for the defendant in the law action, after the jury had retired to consider of their verdict, informed the plaintiff's attorney that he had been informed that the plaintiff had re-married a few months after the death of her husband, Robert Cookson. It appears that the *Page 119 
attorney for the plaintiff was not aware thereof, and stated to the attorney for the defendant that such fact, if it were a fact, could be readily ascertained, as the plaintiff was then in the court room awaiting the return of the jury. The attorney of the plaintiff then discussed with the attorney of the defendant what possible effect her re-marriage could have on the case, and the attorney of the defendant stated that he thought it might have effect on the jury if the attention of the jury were called thereto, and stated that a jury might ordinarily sympathize with a woman who had been left with three small children, and bring in a verdict in her favor as the widow of the decedent, whereas, their verdict might be against her if they realized that she had re-married within several months after her husband's death. The attorneys thereupon talked with the trial judge, and the same matter was discussed in substantially the same way as above mentioned. Both the attorney of the plaintiff and the trial judge stated to the attorney of the defendant that the jury would have no right to be swayed by sympathy, as suggested by the attorney of the defendant. The attorney of the defendant then stated to the trial judge, in the presence and hearing of the attorney of the plaintiff, that if the jury was made aware of the re-marriage of the plaintiff it might have a bearing on the amount of damages to be awarded in case the jury found a verdict for the plaintiff. Both the trial judge and the attorney of the plaintiff expressed their view — in which they seem to have been in accord — that the re-marriage could not in anywise affect the rights of the three minor children of the deceased. The plaintiff was in the court room during all of the aforesaid conversation. The attorney of the defendant did not make application to the trial judge for mistrial, leave to recall the jury for the purpose of listening to further testimony as to the re-marriage of the plaintiff, leave to interrogate the plaintiff as a witness, or otherwise. The jury, at its own request, returned to court and asked to have read to them the testimony of one of the witnesses who testified in the case, and such testimony was read to the jury. The attorney of the defendant was thus afforded an opportunity *Page 120 
of applying to the court for leave to re-open the case for the purpose of enabling him to interrogate the plaintiff as to the fact of her re-marriage, but he made no such application, or no application whatever. The jury again retired to consider of their verdict, and subsequently returned a verdict in favor of the plaintiff and against the defendant of $5,000 damages. The attorney of the defendant then stated to the attorney of the plaintiff that he and his client were disappointed at the verdict, as their expectation was that the jury would find for the defendant. After the jury rendered said verdict, the attorney of the defendant requested the attorney of the plaintiff to withhold action in the entry of judgment thereon until he had consulted with his client relative thereto. The attorney for the plaintiff complied with such request. Thereafter an application was made by the attorney of the defendant for a new trial, and a rule to show cause was granted May 24th, 1927, and returnable June 10th, 1927. Three grounds were urged therein for a vacation of the judgment and for a new trial: "1. Because of newly-discovered evidence, to wit: the plaintiff, Lillian Cookson, was married prior to the institution of this suit, and was on such date not Lillian Cookson, but Lillian Henke. This fact was concealed by the plaintiff in the pleadings, wherein she was represented as Lillian Cookson, and at the trial of this cause this fact was also concealed from the court and jury when she was sworn and gave testimony as Lillian Cookson. 2. Because the verdict of the jury is against the weight of evidence. 3. Because the verdict of the jury was contrary to the charge of the court."
Counsel for the complainant, in his argument, declared that the real issue argued on the return of the rule to show cause, in the action at law, was that a new trial should be granted on the newly-discovered evidence of the plaintiff's re-marriage.
Counsel for the complainant urges that the trial judge, in the law action, did not, in the conclusions filed by him in determining the application for new trial, pass upon the question of fraud urged by the defendant, and that such issue was *Page 121 
not raised before him. If such issue was not raised in the law court, I am at a loss to understand why it was not. The trial judge had an undoubted right to consider such issue, and it appears to me that he did consider it. The defendant could not withhold such issue from him, in view of the reason No. 1 aforesaid embodied in the rule to show cause. The affidavit of the trial judge (Frank L. Cleary), which was read and filed in this cause, sets out, among other things, that as a result of his consideration of the matters urged before him on the argument of the rule to show cause for a vacation of the judgment and for a new trial, he determined that the application of the defendant should not be allowed because his attorney had an opportunity to protect himself at the time of the trial, even after the jury had retired, for a request that evidence be taken concerning the plaintiff's re-marriage and that the defendant should not be permitted to speculate on the jury's verdict and then being dissatisfied with the result, to use the knowledge, previously acquired by him, to procure a re-hearing. He says he was also influenced by the size of the verdict. He points out that the deceased left three children of tender age, the oldest being three years of age, whose right to be compensated for the death of their father could not and should not be defeated by the re-marriage of their mother; and even eliminating any compensation whatsoever, as far as the defendant personally was concerned, he was of the opinion that a verdict of $5,000 in favor of the children alone (liability having been established to the satisfaction of the jury) was not excessive, and if a retrial were had and a verdict for said amount brought in by a jury for the benefit of the children alone, he would not feel warranted in disturbing such verdict.
In paragraph 8 of Judge Cleary's affidavit, he says: "Argument was made before me that Mrs. Cookson, or, as she is now known, Mrs. Henke, was guilty of a fraud in secreting the information as to her re-marriage. After the consideration of the affidavit which she made, together with the opportunity which I had of observing this witness while on the witness-stand and her demeanor in court, I am satisfied *Page 122 
that there was no intention on her part to conceal the fact of her re-marriage and no intention to obtain a judgment through fraudulent concealment, but, on the contrary, believe that it was a mere oversight, and the fact never revealed because she had never been questioned relative thereto and did not realize that it would have any material bearing on the issue then being tried."
It also appears from the affidavits filed in this court that the attorney for the complainant (defendant in the law action) repeatedly promised to make payment of the aforesaid judgment. It appears, also, that the court of errors and appeals, on appeal thereto by the defendant in the law action, dismissed the appeal upon the only ground urged in said court, that is, the refusal of the trial court to grant a new trial — deciding that an application for a new trial called for the exercise of the discretion of the trial court, and was nonappealable. Though the facts upon which the dismissal of the appeal was based do not appear in the bill of complaint, they were conceded by the complainant on the argument of this matter.
The memorandum filed by the trial judge discharging the rule to show cause granted by him, in referring to the grounds urged by the defendant for the setting aside of the verdict and a new trial, says: "Upon the first and second grounds I have come to the conclusion that there is no merit in either of them, because there was ample evidence upon which the jury could predicate its verdict, both from the evidence in the case and upon the charge of the court. As to the third reason advanced, I am satisfied that the evidence was within the knowledge of the defendant early enough to have given the defendant an opportunity of calling it to the attention of the court and jury at the time of the trial. This opinion is based upon the fact that counsel for the defendant spoke about the matter which is the subject now being advanced, as a reason for a new trial, immediately after the jury had retired to consider their verdict, showing conclusively that there was sufficient knowledge in the defendant's possession to have enabled him to have raised the question before the case was *Page 123 
closed. Under such circumstances, I do not consider that the cases cited in the defendant's brief apply to a situation of this kind, but that the case falls within the well-settled law in this state, that evidence to be considered as newly-discovered, which would warrant the court to open a judgment, must be discovered `since the trial.' I do not find that such is the fact in this case."
A court of equity has no authority to correct an alleged error of a court of law, or to aid a party who, through his own negligence, has involved himself in difficulty. Reeves v.Cooper, 12 N.J. Eq. 223.
Where, as in the case sub judice, the defendant has presented the matter which he claims as the ground of his relief to a court of law, and the court has decided against him; or when, through his own negligence, he has failed to present it to the court in which the suit was pending, this court can grant no relief.Reeves v. Cooper, supra (at p. 226).
And where, as in this case, the point was litigated in the court of law and was within its jurisdiction, equity will not interfere. Brick v. Burr, 47 N.J. Eq. (at p. 192).
The complainant has to show that the new evidence was discovered after judgment and too late to take any action in the law case. Hannon v. Maxwell, 31 N.J. Eq. 318.
Equity will not grant relief against a judgment at law on the ground of its being contrary to equity, unless the defendant in the judgment was ignorant of the facts in question pending the suit, or the facts could not have been received as a defense, or unless he was prevented from availing himself of the defense by fraud or accident, or the act of the opposite party, unmixed with negligence or fraud on his part. Commercial, c., v. Hamilton,99 N.J. Eq. 492; affirmed, 101 N.J. Eq. 249.
Equity interferes with judgments at law only where there has been fraud, or mistake, or accident, in procuring the judgments, and where the legal remedies are inadequate. Commercial, c., v. Hamilton, supra.
If a party has a good defense at law, and neglects to avail himself of it through the proper way, and at the proper time, *Page 124 
or if he suffers judgment to go against him by neglect, he can have no relief in a court of equity. McCormick v. McCormick,104 Md. 325; Gorsuch v. Thomas, 57 Md. 339; Thurston v.Minke, 32 Md. 571.
To secure the interference of equity, it will not suffice to show that injustice has been done by the judgment against which relief is sought; it must appear that the party has an equitable defense of which he could not avail himself at law, or had a good defense at law of which he was ignorant until after the time for making the defense at law had passed, or that he was prevented from making his defense by fraud or artifice of his adversary, or by fraud, accident or mistake unmixed with any negligence of his own. Brick v. Burr, supra (at p. 191).
It will be observed that the plaintiff, Lillian Cookson — or Lillian Henke — has only a partial interest in the judgment at law. Three minor children of the deceased have a two-thirds interest in said judgment. It is quite axiomatic in the law of equity that where the remedy at law is adequate equity will not interfere; and it is only by a strict observance of this principle that the boundaries of the two jurisdictions can be properly maintained, and vexatious and ruinous litigation prevented. Wolcott v. Jackson, 52 N.J. Eq. 387. In said case, the court says: "Scarcely any legal ground for a rehearing can now be asserted in a court of equity which may not be asserted with equal effect in the common-law tribunals. As the courts of law have extended their jurisdiction over this subject, courts of equity have, in this instance, withdrawn theirs, in accordance with the principle that where a court of law can furnish an adequate remedy, equity will not interfere."
In McMichaels v. Barefoot, 85 N.J. Eq. 139, 141, the court of errors and appeals says: "The case of Stein v. Cuff,76 N.J. Eq. 277, in this court, is dispositive of the present application. It was there held that: `As a general rule equity will entertain a bill to restrain the enforcement of a judgment and for a new trial in an action at law, only when the grounds on which the new trial is sought are not cognizable *Page 125 
by the court in which the judgment was recovered. A party in an action at law, who applies therein for a new trial on grounds cognizable by a court of law, and who is defeated, cannot afterward be heard on the same matter in a court of equity.'"
In Stein v. Cuff, supra, Chief-Justice Gummere, for the court of errors and appeals, says: "Assuming that the exercise of jurisdiction by the court of chancery in applications for new trials is a matter of discretion in that court, nevertheless, the jurisdiction over that subject is concurrent with that of the law courts, and a litigant may select either tribunal as the forum in which to have such an application considered and determined. If he selects the law court he cannot afterwards be heard upon the same matter in a court of equity, for such a proceeding would be, in its essence, a review of the determination of the legal tribunal, and such power of review does not reside in the court of chancery. The principle that the decision of a court of competent authority is binding and conclusive upon all other courts of concurrent power is of universal application; and for this reason, as was said by Chancellor Kent, in Simpson v.Hart, 1 Johns. Ch. 91, 97, in discussing the question which we are now considering: `Where courts of law and equity have concurrent jurisdiction over a question, and it receives a decision at law, equity can no more re-examine it than courts of law in a similar case can re-examine a decree in a court of chancery.'"
It will be observed that in the case sub judice not only did the defendant in the law case make application for a new trial, and for a hearing and determination thereon — one of the grounds being because of the alleged newly-discovered evidence above mentioned — but he appealed from the determination of the trial court, and said appeal was dismissed by the court of errors and appeals as hereinabove mentioned.
I do not feel called upon to pass upon the question of laches
urged by counsel for the defendant in this cause as a reason for the striking of the bill, in view of the fact that I am of the opinion that the matter submitted to my consideration and determination may be disposed of by me on other *Page 126 
grounds. It is manifest, however, from a reading of the affidavits filed with the court in this matter that the attorney of the defendant in the law action pursued a course of conduct with the attorney of the plaintiff in said action which was apparently intended to lull the plaintiff in said action into quiescence and inaction for several months in taking proceedings to enforce satisfaction of the judgment, and effected such purpose, by the assurance by the attorney of said defendant to the attorney of the plaintiff that the judgment was to be paid.
The mere fact that plaintiff in the law action kept silent as to her marriage, and particularly when not interrogated as to such fact, is not such fraud as will justify a court of equity in enjoining a resulting judgment. If the concealment of the fact of marriage perpetrated a fraud on the defendant in said action, and the fact of re-marriage was material to the issue, and she intentionally concealed such fact for the purpose of misleading and taking advantage of the defendant, and it accomplished its purpose, and the defendant through the exercise of reasonable diligence in the preparation for trial and at the trial could not have anticipated or guarded against the same, the defendant might then be regarded as having an arguable case for this court, but no proof of any such has been adduced in this case. It is manifest to me that the exercise of diligence by the attorney of the complainant (defendant below) through the cross-examination of the defendant (plaintiff below), and a careful preparation of the case for trial, would have revealed the fact of said plaintiff's re-marriage. It is not sufficient ground for relief in equity that the judgment in question was obtained against said defendant in consequence of the neglect, inattention or mistake of his attorney. In Stout v. Slocum, 52 N.J. Eq. 88, 90, it appeared that upon an application for a rule to show cause in the law court why a judgment should not be opened, the chief-justice refused to entertain the motion, and this court (Vice-Chancellor Bird), says: "This is very strong proof that the judge who heard the application was satisfied with the judgment. It certainly *Page 127 
would be an unheard-of proceeding for this court to attempt in any particular to review the proceedings of a court of law when it has jurisdiction of the cause and the parties * * *."
The usual ground upon which a court of equity refuses to interfere with a judgment is because the defendant should have protected himself in the court where the judgment is obtained. The power of a court of equity to look into the judgments of other courts, and relieve against them, on the ground of fraud, is well established; and where the judgment has been procured by artifice or concealment, which may be regarded as tantamount to fraud, and the court where the fraud has been perpetrated is not able to afford adequate relief, this court will prevent the party committing the fraud from using the judgment to the injury of his adversary. Tompkins v. Tompkins, 11 N.J. Eq. 512.
In view of the facts disclosed in the case sub judice, I will advise an order discharging the order to show cause heretofore granted. I will also advise an order granting the motion of the defendant herein to strike the bill of complaint, for the reason that the facts disclosed by said bill and its supporting affidavits, together with the affidavits filed in behalf of the defendant, clearly manifest that this court is without jurisdiction to grant the relief prayed for in said bill; that the bill does not set forth an equitable cause of action, and that the complainant, having elected to seek relief from the operation of the judgment in question through the rule to show cause obtained in the Hudson county circuit court, and, upon adverse decision thereon, to the court of errors and appeals, is now estopped from seeking relief in this court from the operation of said judgment.
The defendant will be allowed costs. *Page 128