Cairo and Fulton Railroad Co. *v.* Titus and Scudder.

----

The Cairo and Fulton Railroad Company *vs.* Titus and Scudder.

1. Equity will relieve a party against a judgment at law when its justice can be impeached by facts, or on grounds, of which the party seeking its aid could not have availed himself at law, or of which he was prevented from availing himself by fraud or accident, or the act of the opposite party unmixed with any fraud or negligence on his part.

2. If new testimony be relied on as a ground for equitable interference with the judgment, and such testimony could, with proper care and diligence, have been procured in time to have been available at law, it cannot be available in this court as the ground for such equitable interference.

3. Nor will equity interfere when the facts, though discovered since the trial, might have been established at the trial upon cross-examination.

4. It will not suffice to show that injustice has been done by the judgment against which relief is sought, but it must appear that this result was not caused by any inattention or negligence on the part of the person aggrieved, and he must show a clear case of diligence to entitle him to an injunction.

----

Bill for relief against judgment at law. Motion to dissolve injunction, on bill and answer, and affidavits annexed thereto respectively.

*Mr. Joseph C. Potts* and *Mr. Cortlandt Parker*, for the motion.

*Mr. T. N. McCarter, contra.*

THE CHANCELLOR.

The bill is filed to restrain the defendants, Titus and Scudder, from proceeding, by suit in Missouri, to recover the unpaid balance of the amount of a judgment recovered in the Supreme Court of this state, in their favor, against the complainants, The Cairo and Fulton Railroad Company, for $17,750, besides costs. The company have paid on account of the judgment, $9669.35, which, they allege, is a far larger sum than is due to Titus and Scudder on the transaction upon which the judgment was founded. Their claim for relief is based on the allegation that since the recovery of the judgment, they have discovered evidence of which they and their attorney and counsel were entirely ignorant at the time of the trial, and subsequently thereto, and until after the entry of final judgment, and until within a few days before the filing of the bill, which would have been most material to their defence, and would at least have prevented a judgment against them for more than $5000, and interest thereon from 1868, and costs of suit. The action at law arose out of a transaction which took place between Columbus B. Guthrie and Titus and Scudder, in the year just mentioned, in which, as the latter allege, Guthrie, as agent for the company, sold to them for the consideration of $5000, paid by them to him, twenty-five of the interest-bearing bonds of $1000 each, which were to be issued thereafter by the company to Guthrie, under a contract entered into by Guthrie and Joseph C. Potts with them, for the construction of the company's railroad. Payment under the contract was to be made in bonds of the company. The contract was then subsisting. Dr. Guthrie, in pursuance of the sale of the twenty-five bonds to Titus and Scudder, obtained from the then president of the company his official acceptance of two orders, one for fifteen, and the other for ten of the bonds, which were therein declared to be deliverable out of the bonds to which Guthrie, (between whom and Mr. Potts some arrangement for division of the bonds, or some part of them, deliverable under the contract, had been made,) would be entitled under that contract. The suit at law was begun

on the 28th of November, 1871. · Jurisdiction of the company was obtained by their appearance to the action, in pursuance of an agreement made between them and the attorney of Titus and Scudder, whereby, in consideration of his delivering to them certain bonds of the company in his hands, or under his control, to which they laid claim, and their claim to which he was not disposed to question, except in order to acquire a lien thereon, (which it was supposed he could do by attachment,) to secure the payment of Titus and Scudder's claim against the company for damages for their alleged refusal to deliver the twenty-five bonds mentioned in the acceptances, or twenty-five other gold-bearing bonds, which Titus and Scudder alleged they had, at the request of the company, subsequently agreed to receive instead of those mentioned in the acceptances, the company agreed to appear to the suit. The declaration, as originally filed, was expressly based on the acceptances, and on them alone. It was subsequently amended by the addition of a count, declaring on the liability of the company as upon a sale of the bonds by them to Titus and Scudder. The issue was tried before Justice Bedle, without a jury, a jury having been waived by the parties. At the trial, Dr. Guthrie was sworn as a witness for Titus and Scudder. The company resisted the claim on which the suit was brought, on the ground that the acceptances were conditional, and that the contingency—that Guthrie should be entitled to the bonds— on which, according to the acceptances, the liability depended, did not appear to have happened; and further, that as to the liability, as upon a sale of the bonds to Titus and Scudder by Guthrie, as agent of the company, there was no sufficient evidence of his authority to bind the company in the premises. The finding of the judge was, on the coming in of the postea, reviewed on a motion for a new trial, with a result adverse to the company. *Titus and Scudder* v. *Cairo and Fulton R. R. Co.*, 8 *Vroom* 98. The bill states that since the entry of the final judgment, the company have discovered that about the time of the transaction between Guthrie and Titus and Scudder, in which the liability in respect of which the suit at law

was brought, was claimed to have originated, an agreement in writing between those parties, and constituting part of the transaction, was executed by Titus and Scudder and Dr. Guthrie, by which an option was given to the latter to redeem the bonds on the payment of $5000 and interest; and they allege that the existence of that agreement was not known to them, or their attorneys or counsel, until after the entry of the judgment, and shortly before the filing of the bill in this cause. They insist that if it had been known to them, or their attorneys or counsel, at the time of the trial, or before the entry of the judgment, they could have availed themselves of it in the action at law; that if it had been known to them at the time of the trial, they could have introduced it, and the effect of it would have been at least to have discharged them from all liability beyond the $5000 and interest; for, that agreement having been made by Guthrie as part of the transaction from which their liability was claimed to have arisen, if he were held to have been their agent in that transaction, they would have been entitled to the benefit of the agreement for redemption; and if, though its existence was not known to them at the time of the trial, it had come to their knowledge in time to have enabled them to have availed themselves of it on their application for a new trial, they could have obtained a new trial on the strength of it. Titus and Scudder have answered the bill, and allege in their answer that the transaction in reference to the bonds, was with Guthrie for and as agent of the company, and that they so understood the matter at the time; that the existence of the agreement in question was not remembered by them at the time of the trial, (no inquiry was made of them on the subject then,) but that Dr. Guthrie did remember it, and would have testified in regard to it if he had been interrogated on the subject; that the agreement for redemption, alleged in the bill, did not exist, and that the agreement which was made on the subject of the re-payment by Dr. Guthrie of the $5000, with interest, in connection with non-delivery of the bonds, was an undertaking by him to repay to them $5000 and interest, provided

the bonds should not be delivered to them in one year from the 1st day of May, 1868, which, they insist, did not give him a right to redeem, and, if it did, it did not enure to the benefit of the company. They also insist that the company was guilty of negligence in not ascertaining the fact of the existence of the agreement before or at the trial, or in time to avail themselves of it on the motion for a new trial.

Equity will relieve a party against a judgment at law when its justice can be impeached by facts, or on grounds, of which the party seeking its aid could not have availed himself at law, or of which he was prevented from availing himself by fraud or accident, or the act of the opposite party unmixed with any fraud or negligence on his part; or, as it is stated by Chief Justice Marshall, in *Marine Ins. Co.* v. *Hodgson*, 7 *Cranch* 335, " any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agent, will justify an application to a Court of Chancery." If new testimony be relied upon as a ground for equitable interference with the judgment, and such testimony could, with proper care and diligence, have been procured in time to have been available at law, it cannot be available in this court as the ground for such equitable interference. *Glover* v. *Hedges, Saxt.* 113, 119. It will not suffice to show that injustice has been done by the judgment against which relief is sought, but it must appear that this result was not caused by any inattention or negligence on the part of the person aggrieved, and he must show a clear case of diligence to entitle himself to an injunction. *High on Injunctions*, § 85 ; *Bateman* v. *Willoe*, 1 *Sch. & Lef.* 204. In *Vaughn* v. *Johnson*, 1 *Stockt.* 173, Chancellor Williamson said : " As a general rule this court will not interfere with a judgment of a court of law, on the ground that a witness was mistaken as to a fact on which the defence turned, or that he swore corruptly." See also *Smith* v. *Lowry*, 1 *Johns. C.*

*R.* 320. The judgment against which relief is sought in this case, does not, apart from the question as to the right to redeem, appear to be against conscience, either as to the amount of damages or otherwise. If, as Titus and Scudder allege, and as appears to have been adjudged in the suit at law, Dr. Guthrie was the agent of the company in the trans-action of the sale of the bonds, the latter have no reason to complain of the result of the suit. If their agent, in a fair business transaction, sold to Titus and Scudder, for $5000, twenty-five of their bonds, not yet issued, to be of the nomi-nal value of $1000 each, no ground for complaint is to be found in the fact that, by the transaction, Titus and Scudder, if permitted to collect the amount of the judgment, will have reaped a large profit. Especially is this the case, if, as appears by the opinion of the court in the case at law, the company were proved to have promised, after the bargain had been made and the acceptances given, to deliver to Titus and Scudder gold-bearing bonds of the same amount in considera-tion of their agreement to discharge the company from their obligation to issue the currency bonds mentioned in the accep-tances.

It is, however, as before stated, insisted by the company that, conceding that Guthrie was their agent in making the bargain, they are entitled to the benefit of the agreement for redemption made by him. But the agreement, (which is not set out in the bill, but is set out in the words of the instrument in the answer, and verified by affidavit,) does not give to Dr. Guthrie the option to take the bonds on the re-payment of $5000 and interest, in case the bonds should not be de-livered in one year from May 1st, 1868. Titus and Scudder did not agree to waive delivery on the re-payment of the $5000, with interest, within the time specified in the provision, nor that Dr. Guthrie should have the right to take the bonds, in case of such re-payment, within the period limited; but the agreement shows a sale of the bonds by Dr. Guthrie to Titus and Scudder, and an agreement by the former to re-pay the $5000 and interest, in case the bonds should, for any

cause, not be delivered within the time limited. The agreement is not in the alternative, to deliver the bonds or re-pay the money, but it is for the delivery of the bonds, with provision for Titus and Scudder's benefit, that, if they saw fit to claim it, they might, in case the bonds should not be delivered within the year specified, demand a re-payment of their money, with interest, and relinquish their claim to the bonds. This agreement did not deprive Titus and Scudder of the right to insist on delivery of the bonds, at any time after the limited period, if they saw fit not to demand re-payment of the $5000, with interest. That such was their understanding of the agreement appears from the fact that, after the execution of the agreement, they obtained from Mr. Potts a written guarantee that the bonds would be issued. The construction put by the company on the agreement for re-payment, cannot prevail. Its effect would have been to secure the bonds to Titus and Scudder, if issued within the year, and there was no value in them beyond the amount of $5000 and interest; and in case there was any such value beyond that amount, to deprive them of the advantage of it, and secure it to Dr. Guthrie or the company. A fair and just construction of the agreement would give to them the right to the bonds absolutely, if issued at all, and whenever issued, with an option on their part to look to Dr. Guthrie for the re-payment of the consideration money, with interest, if the delivery should be delayed beyond the period fixed in that behalf, in the agreement.

The company, then, if their right to the benefit of the agreement were conceded, had, in this view of the matter, no right of redemption. The transaction was not a mere mortgage. The evidence of the agreement, if it had been presented at the trial, could not have availed them. But there is another pertinent consideration in the case. The evidence might have been had upon the trial. A witness placed on the stand by Titus and Scudder was ready to give it, and would have done so if he had been inquired of concerning it. It appears, from the affidavit attached to the bill, that he was.

only restrained from giving it without inquiry, by his views of propriety in giving his testimony, and that inasmuch as no inquiry on the subject was made by either side, he supposed that the fact of the existence of the agreement for re-payment was not material to the issue, and therefore did not refer to it. Inquiry on the part of the company, who were defending on the ground that the transaction was Dr. Guthrie's private matter, and was not on their behalf or account, as to what papers were executed or agreements made between the parties, was reasonably to have been expected, especially in view of the fact that Mr. Marquand, who, as vice-president of the company, signed their appearance in the action, says, in his affidavit attached to the bill, that he understood from the attorney of Titus and Scudder, at the time when the agreement that the company should appear to the suit, was made, that the claim of Titus and Scudder was for the sum of $5000. In *Taylor* v. *Sheppard*, 1 *Y. & C.* (*Exc.*) 271, it was held that a bill in equity to set aside a verdict, was not sustainable where the facts on which the bill was founded, though discovered since the trial, might have been established at the trial, upon cross-examination. In *Smith* v. *Lowry*, 1 *Johns. C. R.* 320, it was held that an injunction would not be granted to stay proceedings at law on a judgment, on the ground that the defendant at law was prevented, by public business, from making due preparations for and attending at the trial, and that the plaintiff had, on the evidence of one witness, whom he had suborned to swear falsely, recovered a judgment for a much larger sum in damages than he was entitled to, and that the Supreme Court had refused to grant a new trial in the cause. In that case, Chancellor Kent said: "It would be setting a precedent most inconvenient to the public, for this court to interfere in a case like this, of the alleged perjury of a witness on a question as to the amount of damages, and to provide for a new trial, when an application for a new trial has already been denied at law, and when courts of law exercise a most liberal and equitable discretion on the subject of new trials, and

when the injury complained of is, in a great degree, to be imputed to the party's own want of preparation." In *Floyd* v. *Jayne*, 6 *Johns. C. R.* 479, the same Chancellor said: "It is the settled doctrine of this court, as well as of courts of law, that a party is not entitled to relief after verdict, upon testimony which, with ordinary care and diligence, he might have produced upon the trial at law. It would be establishing a grievous precedent, and one of great public inconvenience, to interfere in any other case than one of indispensable necessity and wholly free from any kind of negligence."

It is further to be remarked that the judgment in the case before me did not depend on the liability of the company through the alleged agency of Guthrie. Conceding that the latter was acting merely in his own behalf, and in no wise represented the company in the transaction with Titus and Scudder, and that the acceptances were merely conditional, and that there was no evidence that the contingency had happened, the Supreme Court held the company liable, by reason of their having, with knowledge of the rights of Titus and Scudder in the premises, agreed, without their consent, to a rescission of the contract between the company and Messrs. Potts and Guthrie, under which the bonds mentioned in the acceptances were to be issued; and also, on the ground of a stipulation on the part of the company with Titus and Scudder, to deliver to them gold-bearing bonds, instead of the twenty-five bonds mentioned in the acceptances (which were currency bonds), which contract was held by the Supreme Court to have been made on a valid and sufficient consideration..

The injunction must be dissolved, with costs.