THE CAIRO AND FULTON RAILROAD COMPANY, appellants,

and

BENJAMIN W. TITUS and others, respondents.

28  269
51  368
28  269
56  405

1. A written contract relating to the matter in controversy, made by a former agent of the appellants, and not produced at the trial because the appellants were ignorant of its existence, is material, within the rule requiring newly discovered evidence, as a ground of relief, to be material.

2. The possession and concealment of such contract at the trial, by the counsel of the respondents, exonerates the appellants from the charge of laches, notwithstanding such former agent was a witness for the respondents, and the fact of the existence of the contract might have been elicited from him on cross-examination.

On appeal from an order dissolving an injunction. The opinion of the chancellor is reported in 12 *C. E. Gr.* 102.

*Mr. T. N. McCarter,* for appellants.

*Mr. C. Parker,* for respondents.

GREEN, J.

The bill in this cause was filed for relief against a judgment at law, recovered by the defendants, in the supreme court of this state, against the complainants, upon an alleged contract for the sale of twenty-five bonds of the Cairo and Fulton Railroad Company, of the par value of $1,000 each, for the sum of $5,000. The alleged contract, upon which the action at law was founded, was negotiated between one Columbus B. Guthrie, either in his own right or as the financial agent of the Cairo and Fulton Railroad Company, of the one part, and the defendants, Titus and Scudder, of the other part.

The declaration, as originally filed, was for damages for the non-delivery of the bonds by the company, in pursuance of certain orders for the same, drawn by Guthrie in favor

of the defendants, in pursuance of the contract, and accepted by the president of the railroad company, and was subsequently amended by the addition of a new count upon a contract for the sale of the bonds directly by the company to Titus and Scudder.

Judgment was recovered for $17,750, of which the company have paid more than one-half, and which they allege is a larger sum than is equitably due to the defendants.

Relief is sought against the judgment upon the ground of surprise and fraud, and of newly discovered material evidence, of which the complainants allege that they and their counsel were entirely ignorant from the time of the commencement of the suit at law until its final determination, and until a few days prior to the filing of the bill.

Upon the filing of the bill an injunction issued, restraining the defendants from collecting any more money on account of their judgment, and from taking further proceedings of any kind for that purpose. The injunction was afterwards dissolved by the chancellor, upon hearing on bill and answer and affidavits annexed. And from this order the appeal was taken.

The facts of the case and the material allegations of the bill are fully set forth in the opinion of the chancellor, reported in 12 *C. E. Gr.* p. 102, and it is unnecessary again to repeat them. And the principles upon which courts of equity give relief against judgments at law, are also therein clearly stated, and are not controverted or questioned by the counsel on either side.

The present appeal does not involve the merits of the controversy between the parties. The only question is, whether sufficient equity is shown to justify the court in holding the injunction until the final hearing of the cause. Was the newly discovered evidence material to establish the complainants' defence to the action at law, and could they, by the exercise of due diligence, have discovered the same in time to avail themselves of it upon the trial?

The alleged newly discovered evidence consists of a written agreement between Guthrie and Titus and Scudder, relative to the subject matter of the controversy between the parties; a discovery of which was prayed in the bill, and which is set forth in the defendants' answer, and of the existence of which the complainants allege themselves to have been entirely ignorant until a few days previous to the filing of their bill.

It cannot be doubted that this agreement was very important evidence on behalf of the complainants, and material to their defence of the suit.    It sets forth the terms of the negotiation between the parties ; and, while it is not now necessary to discuss its meaning or to settle its true construction, about which counsel widely differ, it is sufficient to say that it lay at the very foundation of the controversy ; that the cause could not have been fairly and fully tried without it; that, if produced, it must have received the serious consideration of the tribunal before which the cause was tried ; and that by it the result of the trial might, and probably would, have been changed or materially modified.

Still the complainants are not now entitled to the benefit of this evidence, or to any equitable interference with the judgment, if there has been negligence or laches on their part. If this evidence might have been discovered, by the exercise of ordinary diligence on the part of the complainants, in time to have been available at the trial of the cause, they are not entitled to relief.

The contract was made in February, 1868, more than five years before the trial of the cause, and it is not denied that it has ever since been in the possession of the defendants or their attorney.    It was not set forth or mentioned in the plaintiffs' declaration, nor was any reference made to it in either of the bills of particulars furnished to the complainants.    At the time of the trial it was in the hands of the defendants' attorney, who must have known its relevancy and importance to the proper determination of the issue

between the parties. Its existence was never made known by him to the parties interested in its production; nor even whispered to his associate counsel. And, without any imputation of fraud, it must be conceded that there was persistent and intentional concealment of this important testimony on the part of the attorney and agent of the defendants. Guthrie and Titus, both parties to the agreement, were examined as witnesses, at the trial, on the part of the plaintiffs in the action at law, and were the only witnesses in the cause. Neither of them referred to the written agreement or even mentioned its existence. The defendants excuse themselves by the statement, in their answer, that they had delivered to their counsel all the papers ever possessed by them relative to the transaction, and that they both were, at the time of the trial, and until after the filing of the bill of complaint, entirely forgetful that any instrument of writing had ever existed touching said subject matter, other than the acceptances set forth in the declaration. Admitting that they are, as they insist in their answer, guiltless of any misrepresentation or concealment in the premises, they are responsible for and chargeable with the concealment practiced by their agent and representative.

But it is said that the complainants' counsel, by a proper cross-examination of the witness, Guthrie, on the trial of the cause, might have elicited from him the existence and terms of the written agreement, or compelled its production by the defendants. And the omission to make such cross-examination is charged against the complainants as laches and want of proper diligence on their part.

Guthrie states, in his affidavit annexed to the bill, that while he was under examination as a witness at the trial of the cause, he expected that counsel, either of plaintiffs or defendants, would inquire of him concerning the existence and terms of said written agreement; but, inasmuch as no such inquiry was made, he supposed that the fact was not material to the issue, and therefore made no reference to it.

The fact to be elicited by the cross-examination was not within the knowledge of the complainants or their counsel. The complainants were not a party to the agreement, and were entirely ignorant of its existence. It was a material fact peculiarly within the knowledge of the adverse party. The paper was not referred to in the pleadings, nor mentioned in either of the bills of particulars furnished by the defendants. The defendant, Titus, on his examination, did not mention it; his counsel did not refer to it. They tried the cause and made their case on a different theory. Everything done by the defendants, whether intentionally so done or not, tended to blind the eyes of the adverse counsel, or to lead them in a different direction. It is true, astute and adroit counsel might have adopted a course of cross-examination which would have elicited the truth; it is equally true that a mere blunderer might have accidentally stumbled upon it. But can it be that its omission, under the circumstances, can be held to be such laches and want of diligence as to deprive a party of all equitable right to relief? It may well be said, in the language of another, that such a result would be the sacrifice of a substantial right to a mere shadow.

The objection might have more weight if there had been no concealment of this important evidence on the part of the defendants. Candor and fair dealing required its disclosure; its production before or at the commencement of the suit might have prevented all litigation, and led to a just settlement of the controversy. If not, it would have deprived the complainants of all claim to relief in this court. By the retention of the injunction to the final hearing, no injustice can be done to the defendants. They retain the security of their judgment, and are only delayed in its collection until the cause can be disposed of on its merits.

The order dissolving the injunction should be reversed, with costs, and the record remitted to the court of chan-

cery, to be proceeded in according to the rules and practice of that court.

For reversal—DEPUE, SCUDDER, CLEMENT, DODD, GREEN, LILLY, WALES—7.

For affirmance—BEASLEY, C. J., DALRIMPLE, DIXON, REED, VAN SYCKEL, WOODHULL—6.