JOHN RUCKELSCHAUS'

*v.*

MARY F. J. OEHME, administratrix.

1. O. executed and delivered a deed of real estate to McC., who leased the premises to plaintiff for a term of five years. McC. died, and his administrator, as agent for his heirs, collected rents thereafter accruing. He informed O. that he was about to collect the rents, and she made no objections thereto, but admitted the execution of the deed, and that the title was in McC. and heirs. The agent informed plaintiff of her statements, and he paid the rent relying thereon. The heirs paid taxes, and repaired the premises, and exercised exclusive ownership, to which O. made no objection. O. afterwards.

Ruckelschaus v. Oehme.

recovered the premises in ejectment on the ground that McC. had fraudulently procured the deed from her, and sued plaintiff for mesne profits, recovering a verdict.—*Held*, that her conduct constituted an equitable estoppel; and the tenant, on assigning to her his claim to recover the rent from the executor and heirs, would be entitled to an injunction to restrain the entry of judgment on the verdict.

2. The fact that in making such admission the owner did not intend to mislead the tenant, will not defeat the equitable estoppel thus arising.

3. The fact that the estoppel was pleaded in the action for mesne profits, and that evidence thereof was excluded, was not an adjudication that the estoppel did not exist, but only that it was not available in an action at law.

4. Where offers of proof of an equitable estoppel in a law action are excluded upon objection by plaintiff, he cannot, in a suit in equity by defendant setting up the facts constituting such estoppel as a basis for affirmative relief, object that the ruling excluding the evidence should first have been reviewed by motion for new trial, or by writ of error.

On demurrer to bill and order to show cause why injunction should not issue.

*Mr. Joseph Coult* and *Mr. Carl Lentz*, for the complainant.

*Mr. Cortlandt Parker* and *Mr. Chauncey G. Parker*, for the defendant.

PITNEY, V. C.

The object of this bill is to restrain the entry of judgment upon a verdict in an action for mesne profits following a judgment in ejectment.

The ground of relief is that the conduct of the defendant's intestate, who was plaintiff in ejectment, had been such as to render it inequitable that she should recover and collect from complainant a certain portion of the verdict, and as to the balance complainant offers to pay and has paid it to the defendant without prejudice.

On presenting the bill with affidavits annexed an order to show cause with interim restraint was made, and on its return a demurrer to the bill was interposed, and the order to show cause and the demurrer were heard together.

The case made, or intended to be made, by the bill and affidavits is as follows:

Prior to January 5th, 1879, one McCulloch was tenant by the curtesy of a certain store-house in Newark. The issue of his deceased wife, whose birth gave rise to his estate, was dead and the title in remainder was in his dead wife's sister, who was her heir at law, the defendant's intestate, Mary F. J. Oehme. On that day, January 5th, 1879, the intestate, Mrs. Oehme, executed and delivered to McCulloch a deed of conveyance in fee of the store, and the same was duly recorded April 10th, 1879. On the 16th of March, 1880, McCulloch leased the store to the complainant for five years from April 1st, 1880, at an annual rent of $2,100, payable monthly, for three years, and $2,500 per year for the last two years of the term, and under that lease complainant entered upon and occupied the premises continuously for five years. On May 3d, 1883, McCulloch died intestate, leaving numerous collateral heirs, all non-residents of New Jersey and scattered throughout the other states of the Union. Soon after his death one Kase took out letters of administration upon his estate, and hunted up his heirs, and procured from them a power of attorney to collect the rents of the store. Among the papers of his intestate, Kase found the deed above mentioned from Mrs. Oehme to McCulloch, and called upon Mrs. Oehme (who resided in Newark, and owned the premises next adjoining those occupied by complainant under the lease aforesaid), and talked with her about the title to the store, and the deed just mentioned, and stated to her that he proposed, as agent of the heirs, to collect the rent of the store from complainant, and she thereupon admitted to him that she had made the deed, and that the title was in McCulloch's heirs, and made no objections to the collection of the rent by Kase as attorney for those heirs. Kase communicated this conversation and the existence of the deed to complainant, exhibited his power of attorney and demanded the rent. Complainant relied upon that statement, and in good faith believed that the title to the premises was in McCulloch's heirs, and had not the least suspicion that Mrs. Oehme had, or claimed to have, any interest therein, and in that belief paid to Mr. Kase

Ruckelschaus v. Oehme.

the monthly installments of rent for the premises accruing from the death of McCulloch up to the 20th of July, 1884, on which date, without any previous notice or claim, Mrs. Oehme commenced an action of ejectment against him to recover the possession of the store. He gave notice to the heirs of McCulloch, through their agent, and a small portion in interest of these appeared and joined in the defence of the action. After two trials before a jury judgment was rendered against him and he then attorned to Mrs. Oehme.

The ground upon which such recovery was had was that the above-mentioned deed from Mrs. Oehme to McCulloch had been procured from her by fraud.

The heirs of McCulloch paid the taxes upon and assessments against the property, which were levied in their names as owners, and also paid the insurance and repairs upon it, and in that way, as well as in collecting the rent, exercised full and exclusive ownership over it, while Mrs. Oehme attempted no acts of ownership prior to the ejectment. Mrs. Oehme during all this time collected the rents of the adjoining premises in person, and visited them in person for that purpose, and knew that complainant was paying the rent of the store in question to the heirs of McCulloch.

The bill alleges that only a small portion in interest of the heirs of McCulloch having been made parties to the ejectment, the remainder are not bound by the verdict and judgment thereon, and, as against those, complainant cannot recover back the moneys paid for rent prior to the commencement of the ejectment without proving the fraud upon which Mrs. Oehme claimed, and, as to those who were made parties, he will have difficulty in so doing by reason of their non-residence and possible lack of pecuniary responsibility.

On the trial of the action for mesne profits complainant offered to prove the foregoing facts as a defence *pro tanto* to the action, and the same were, on defendant's motion, all excluded by the court as incompetent, and a verdict directed against complainant for the use and occupation of the premises from the date of McCulloch's death.

I. The first and principal ground of demurrer relied upon is, that the estoppel claimed by complainant is available at law as well as in equity, and having been set up at law and passed upon and overruled by the court, cannot be the ground of relief in this court.

I think that if the premise of this proposition is true the conclusion follows inevitably.

When a court of law and one of equity each have complete concurrent jurisdiction of a particular right so that either can fully administer it, and it has been set up and considered upon its merits and adjudicated upon in one of them, and judgment or decree passed upon it one way or the other, the matter then becomes *res adjudicata*, and the other court is bound by the result and will not re-examine the matter, although had it been presented to it in the first place it would have dealt with it.

If the equitable defence—admitting it to be such for present purposes—to the action for mesne profits set out in the bill was available at law, and could be administered and enforced there, and the law court so held but adjudged it to be worthless, then, in my judgment, the complainants have no standing here. But the mere fact that evidence relied upon to prove the estoppel has been offered and rejected by the law court is not of itself proof that that court considered it upon its merits, so to speak, since it may have been rejected because the estoppel arising out of it was not, in the judgment of the law court, of such a nature as to be capable of being dealt with and administered in that court—in other words, that it was a purely equitable estoppel not available at law.

In order to determine, therefore, whether the judgment of the law court in this case was final and conclusive, it is important not only to consider what, according to the allegations of the bill, actually occurred in that court, but also what is the precise injury which the complainant will suffer if judgment is entered on the verdict, and he is obliged to pay it.

Complainant says that, by reason of Mrs. Oehme's conduct and silence, he paid the rent which accrued under his lease between the death of McCulloch and the commencement of the suit

in ejectment to persons who, he had the right to suppose, and did suppose, were in right entitled to it, and that if he now pays defendant for the use and occupation of the premises during the same period, he will be obliged to pay twice over for the same use and occupation.

To this the defendant answers that complainant will have a right to recover back these rents so paid by him, either from the heirs of McCulloch or from McCulloch's administrator, upon the implied warranty arising out of the demise.

To this answer of the defendant the complainant makes a two-fold reply—*first*, that those heirs are numerous and all non-residents and scattered, and their pecuniary responsibility is unknown, and the remedy over against them for that reason extremely precarious, and, *second*, that as to most of them they were not parties to and are not bound by the judgment in ejectment, and that to recover against them he must attack the deed from Mrs. Oehme to McCulloch and establish the fraud over again, which will prove a well-nigh impossible undertaking in the absence of Mrs. Oehme. And as to his right to recover against McCulloch's administrator, that is limited by the assets still remaining in his hands.

This reply shows just what, upon complainant's theory, he has actually lost by the inequitable conduct complained of. Clearly he has not lost any right as against the heirs of McCulloch. There is not the least shadow of an estoppel in their favor. They did not act upon the strength of Mrs. Oehme's conduct or silence, or in the least change their position in reliance upon it. As against them she is still in justice entitled to have compensation for the use and occupation of these premises from the death of McCulloch, upon establishing as against each the fraud in the procuration of her deed to McCulloch. And if all the heirs had applied and had been made parties defendant in the ejectment suit, and had been sued and served with process in the action for mesne profits, they would have had no defence against the action. *Ad. Ej. 337; Hunter v. Britton, 3 Camp. 455.* Whether or not they will have such defence as against complainant in an action to recover back the rents after receiving notice of the suit may be

doubtful. Now, admitting that complainant may on his own account set up an estoppel against defendant, he can only do so for his own benefit, and not for the benefit of the heirs to whom he paid the money, nor of the administrator of McCulloch, and he may not make such use of it as to give either of them even indirectly the benefit of it. His right to recover back from them the payments he has made is unaffected by his right of estoppel against the defendant.

If, however, complainant had been permitted by the court of law to set up there his estoppel against the defendant, the latter's right to reach the moneys received by these heirs from complainant would, as against such as were not parties to the ejectment, as it now seems to me, be gone, while complainant's right to recover them back from those heirs or from the administrator would remain. That is, defendant's only remedy against such heirs is through complainant. These views show just how far complainant is entitled to use his estoppel. He was not and is not entitled to set it up as against defendant's claim for mesne profits, except upon terms of assigning to defendant his claim against those heirs and against McCulloch's administrator for the rent paid by him during the period covered by the estoppel. Or, to otherwise express it, his estoppel entitles him to be indemnified by the defendant against the risk and expense of recovering back the moneys so paid by him in good faith and in ignorance of Mrs. Oehme's title. This will be complete indemnity to him, and that is the end and aim of all estoppels. *Campbell* v. *Nichols, 4 Vr. 81* (at *p. 88*); *Holcomb* v. *Wyckoff, 6 Vr. 39.*

Chief-Justice Beasley (*4 Vr. 88*) says: "But suppose the purchaser gave only part value for the note, upon what principle should he be allowed to recover more than the money thus paid of the drawer, who, although he inadvertently admitted his liability, in point of fact owes nothing on the paper. The true measure is, that the party acting on the faith of a representation should be indemnified from loss, by the application of the doctrine of the estoppel *in pais,* and these limits, as I think, take in the whole field of the doctrine. The rule is designed to protect against fraud, either in fact or in law; but the remedy does not

extend beyond the injury.   Neither good policy, nor honest deal-
ing, requires that one who has made an admission which has
influenced the conduct of another, should be estopped by such
admission from showing the truth of the case, except to the
extent of permitting the person misled from recovering indemni-
fication.   For it is to be remembered that the principle of
estoppel applies as well to cases of unintentional deceptions as to
designed and actual frauds; and it would certainly seem plain
that, in the former class of cases, the limitation of the doctrine
above indicated is absolutely necessary for the accomplishment
of the ends of justice." And see *Sumner* v. *Seaton, 2 Dick. Ch.
Rep. 103* (at *p. 121*).

The case in this aspect is in marked contrast with a numerous
class of cases where equitable estoppel is the foundation of a re-
covery of a sum of money in an action at law, and where the
defendant upon payment of the amount recovered is, either by
the sheer force of such payment at once subrogated to the right
of the plaintiff against the third party, or becomes entitled in
equity to such subrogation.   Here the recognition by the court
of law of the validity of the defence there set up by complainant
would not, as it seems to me, operate as a subrogation of the de-
fendant to the right of complainant to recover from the heirs at
law or personal representative of McCulloch.

If I am correct in the foregoing views, then it seems to me
clear enough that this estoppel may well have been held by the
law court not to be there available.   The machinery of that court
is not adapted to deal with and apply such a right as a defence.
In short, it was not an absolute defence, but a conditional one
merely.

Just here it is important to remember that the recognition and
enforcement of equitable estoppels by courts of law is an innova-
tion.   Originally they were available only in equity, and they
are now enforced at law only in cases where such enforcement is
in accordance with the procedure in that court and will work
complete justice to all parties.

There is another consideration which arises out of the peculiar
character of the action for mesne profits following a judgment in

·ejectment. Such judgment is, at law, conclusive of the right of the plaintiff to recover. *Den.* v. *McShane, 1 Gr. 35.* The court (at *p. 38*) says: " The answer to this argument is conclusive, and shows the wisdom of the rule that the demise must be subsequent to the accrual of the right of entry. A judgment in ejectment is ·conclusive evidence of the title of the lessor to the mesne profits .accruing subsequent to the day of the demise, during such time as ·the defendant has held the premises in question. If judgment in ·this action, as the declaration now stands, should be rendered for the plaintiff, he would in a subsequent action for the mesne profits, .after proving the defendant to have been in possession of the premises from the 2d day of May, 1824, entitle himself to recover the .mesne profits from that day, and the defendant could not question ·or dispute it, although it now appears he was, during a portion ·of the time, in lawful possession, and has actually made compensation, according to the agreement of the parties, for the use of the premises during that period; for, as already remarked, the judgment conclusively and incontrovertibly establishes the right to recover the mesne profits from the day of the demise."

And it may be that the law court, in the case in hand, was of the opinion that the complainant herein was, by the hard and fast rule just stated, precluded in that court from setting up any defence whatever. If so, then it seems to me that an equity at ·once arose in favor of the complainant which is available only ·here; for, in my judgment, it would be highly inequitable for the defendant to set up and insist upon such a rule of law to shut ·out so meritorious a defence.

Much discussion occurred at the argument as to just what the law court decided in rejecting this defence. Complainant alleges ·in his bill that the court, in overruling it, said: " That the question was whether an equitable estoppel is a defence, and that the ·court considered it an estoppel not admissible in that case—that ·there was nothing in the case to indicate that there had been any fraud practiced." I shall confine myself to that statement, and, looking at it in connection with the nature of the cause just referred ·to and the character of the estoppel, I fail to find anything to ·warrant the conclusion that the learned judge considered the de-

fence on its merits and adjudged it worthless.   On the contrary, I think that he decided only that the facts offered to be proven did not constitute an absolute defence available in that court in that particular cause.

The defendant contended that complainant was premature in coming to this court—that he should first have exhausted his remedy at law by application for a new trial or by writ of error to review the ruling of the trial court.

But I think defendant is estopped, so to speak, from taking that point.   The evidence and defence claimed to arise from it was overruled on his objection and motion, and it does not now, as it seems to me, lie in his mouth to say that peradventure the learned trial judge was in error in acceding to his request, and that the court in bank may correct him.   Complainant was entitled to accept the ruling of the circuit judge as the law, and this court is bound to so accept it.

As the matter appears to this court the law court decided that the equity here set up did not constitute a defence available at law in that court and in that cause, and did not attempt to decide what it had no power to decide, that it was or was not available in equity.

I find, therefore, nothing in what occurred in the law court to prevent the complainant from presenting his case for what it is worth in this court.

II. So far I have assumed that an equity did arise to complainant out of the facts alleged in the bill.   It remains to consider whether that assumption is valid.

The salient points relied upon by complainant are—*first*, the execution by Mrs. Oehme and delivery to McCulloch, the tenant for life, of a deed of conveyance, full and regular on its face, conveying to him her title in reversion to the premises ; *second*, the recognition by her of the validity and efficiency of that conveyance to the agent of the heirs at law of the grantee immediately after his death, and at a moment when she had notice that he proposed to collect the rent arising from the premises from the complainant and pay them to those heirs ; *third*, her silence and acquiescence in the occupation by complainant of the

premises under circumstances which charge her with notice that he, as tenant, was paying the rent to the heirs of her grantee.

With regard to the conveyance—nothing can, of course, create a stronger estoppel so far as acted upon. It is in fact properly classed as a legal estoppel as contradistinguished from an equitable estoppel. *Pom. Eq. Jur.* § *802.* On the facts stated Mrs. Oehme was chargeable with knowledge that she had, in fact, executed and delivered the deed; and if, upon the strength of the title purporting to be conveyed by it, a *bona fide* purchaser for a valuable consideration without notice of the fraud had taken title from McCulloch, it is difficult to perceive how Mrs. Oehme could have recovered against it. It had no force, however, by way of estoppel against either McCulloch or his heirs, who are mere volunteers. However, the case does not show that the complainant knew of this deed at the date of his lease and took that instrument on the strength of it, and hence it could not avail him in aid of his title under his lease as a defence to the ejectment. Besides he paid no bonus or cash down for the lease, and the rent reserved was nearly or quite the full annual value of the premises, so that the validity of the lease as against Mrs. Oehme was of little consequence, and, it may be easily conceived, received little attention at the trial of ejectment. But when McCulloch's life estate ended and complainant was called upon to pay the accruing rent to McCulloch's heirs, and was told, and told truly, by their agent that Mrs. Oehme had conveyed her reversion to McCulloch by a deed which she now recognized as valid, the affair assumed a different aspect. From the moment that complainant had notice of the deed, and acted upon it by paying rent to the heirs of the grantee without notice of any infirmity in it, he occupied the position of a *bona fide* purchaser without notice to the extent of the rent paid, and is entitled to be protected in the manner and to the extent before indicated.

I assume that in the action of ejectment Mrs. Oehme's title was stated to have commenced at the death of McCulloch, and a recovery which fixed that as the date of the accrual of her title against all the world was perfectly proper in order to fix the time when her right to the enjoyment of the premises commenced

as against all the world, although by reason of the facts of the case it would be inequitable for her to enforce that right against the complainant herein, except upon terms.

An estoppel would arise in favor of complainant as a result of his having acted upon the bare deed. But that result is fortified by the positive recognition of its validity and the title under it made to Mr. Kase and communicated by him to the complainant. Indeed, it seems to me that if there had been no deed, and Mrs. Oehme had simply stated to the agent of the heirs that McCulloch was the owner in fee simple and that his heirs were entitled to the property, the result would, under the circumstances, have been the same. She had notice that complainant had been occupying the premises as a tenant of McCulloch, and that he was continuing that occupation as tenant of somebody, and would, in the natural course of business, pay the rent to the person appearing to be the owner. McCulloch was in his lifetime the apparent owner, and at his death his heirs in turn became the apparent owners, and the persons to whom complainant would naturally pay the rent. Under such circumstances it seems to me that a bare admission by Mrs. Oehme that those heirs were entitled to the property without mentioning the deed, would, if acted upon, be sufficient.

It was argued by defendant that the admission made to the agent of the heirs in the absence of complainant could not bind. The general rule may be as claimed by defendant, that admissions or statements made to third parties do not bind. But the reason of the rule is that they are made under such circumstances as that the party making them is not chargeable with notice that anyone is likely to act upon them.

Here, however, they were made to the agent of the heirs who was employed to collect the rent from the tenant and who stated that he was about to do so. It seems to me that Mrs. Oehme was bound, under such circumstances, to suppose that the agent would naturally and properly communicate her admission to the tenant, and that he would or might act upon it. And I am unable to perceive any reason why he should not act upon it, provided he was satisfied with Kase's truthfulness and reliability.

This point as made by the defendant is, I think, fully cov--
ered and met by the decision of the court of appeals in *Martin* v.
*Righter*, *2 Stock. 510.* There the obligee of a bond had executed
to the obligor a general release which undoubtedly operated to·
extinguish the debt. The obligor, nevertheless, made a payment
of interest on it to the obligee and wrote and took a receipt for·
it, and gave the obligee a little slip of paper in his, the obligor's,
handwriting, containing these words: "$73.79. Rec'd Oct. 20,
1849." The obligee applied to the complainant, Martin, to take·
an assignment of the bond, and showed to him this slip of paper,
and stated to him that the amount there named was paid by the·
obligee as interest to a certain day. Martin acted upon the state-
ment, and paid and advanced to the obligee the amount appar-
ently due upon the bond' without making, inquiry of the obligor.
It was held that the obligor was estopped by his conduct from
setting up the release against Martin, although he had no notice·
that the obligee intended to assign away the bond. Says Mr.
Justice Potts, in delivering the prevailing opinion of that court
(*2 Stock. 525*) : " Though he [the obligor] did himself not see or
communicate with the complainants [the assignees] or their attor-
ney, yet he, by this means, authorized Stephen [the obligee] *truth-
fully* to represent to complainants' counsel that that amount of
interest had been paid that day on the bond by Michael [the·
obligor] himself, and that he had thus virtually acknowledged his
indebtedness for. the balance of principal and interest remaining
due. If this transaction had taken place in the presence of the
complainants or their attorney, it would have estopped Michael
from setting up the release as against the assignees of the bond
and mortgage ; *and the distinction between an act done in the
presence of a party, by which he is induced to become a pur-
chaser, and the same act done in the presence of a third party, and
which, being truthfully represented to another, induces him, upon
that information, to purchase, is a distinction without a differ-
ence.* 'An equitable estoppel,' says Mr. Justice Carpenter, in
*Den.* v. *Baldwin, 1 Zab. 403,* ' rests upon the principle that when
any one has done an act or made a statement *which it would be·
fraud on his part to controvert or impair*, and such act or state-

ment has so influenced any one that it has been acted upon, the party making it will be estopped and cut off from the power of retraction.   It must appear, *first,* that he has done some act or made some admission inconsistent with his claim ; *secondly,* that the other party has acted on such conduct or admission ; and, *thirdly,* that such party will be injured by allowing such conduct or admission to be withdrawn.' "

It is true that this was the opinion of a majority only of the court, and among those dissenting from it are the chancellor in the court below, and Chief-Justice Green, Justices Elmer, Vredenburgh and Ogden.   But Justice Elmer, in speaking for the minority, quotes with approval Judge Carpenter's definition of equitable estoppel above quoted, and both he and Chancellor Williamson stated that all the facts indicated that had the complainants in that case applied to and inquired of Michael Righter (the obligor), he would have set up and insisted upon his release, and that he (Michael) had the right to suppose that if Stephen (the obligee) told the Martins anything, he would tell the whole truth, which was that he held a release against the bond, so that I do not understand the minority in that case to have dissented from the cardinal doctrine laid down by Justice Potts, " that the distinction between an act done in the presence of a party, by which he is induced to become a purchaser, and the same act done in the presence of a third party, and which being truthfully represented to another induces him, upon that information, to purchase, is a distinction without a difference."

But though the decision in *Martin* v. *Righter* is that of a mere majority, it is, nevertheless, binding upon me, even if it did not, as it does, meet with the approbation of my individual judgment.

It was contended that there was here no *intention* on Mrs. Oehme's part to mislead the complainant, nor anything to indicate that she was guilty of any *actual fraud.*

But it is now well settled that neither of these elements is necessary to an equitable estoppel.   *Cornish* v. *Abbington, 4 Hurlst. & N. 549; 2 Pom. Eq. Jur.* § *803 et seq.*

It is well said, in such cases, that a party is presumed to intend the natural consequences of his own act.   So with regard to

Ruckelschaus *v.* Oehme.

fraud. It is quite sufficient if the result of the change of position proposed to be made will operate as a fraud on the other party. This clearly appears from Judge Carpenter's definition above quoted, and also from the language of the chief-justice in *Campbell* v. *Nichols, 4 Vr. 88*, above quoted, and is laid down as the settled rule by Prof. Pomeroy, section 803. In the course of the discussion he shows that the element of actual fraud is more frequently relied upon at law than in equity, and says:

" I would venture the suggestion that the theory which regards fraud as the essence of equitable estoppel originated in courts possessing only a partial and limited jurisdiction. Such courts, administering nearly the whole jurisprudence by means of legal actions, and being able to admit equitable notions only so far as they could be harmonized with legal dogmas and legal procedure, would naturally formulate the doctrine of equitable estoppel in such a manner that it should become a rule of law not inconsistent with the legal system as a whole. *This could only be done by giving prominence to the element of fraud, and by making it in fact essential.* By this method equitable estoppel was made to be a branch or application of the legal rules concerning fraud."

And in sections 805 and 807 he shows that actual fraud has been in many instances held an essential element in estoppels affecting title to land in actions at law. And this distinction may have been in the mind of the learned trial justice in speaking as he did of the absence of actual fraud in this case.

In *Stevens* v. *Dennett, 51 N. H. 324* (at *p. 330*), the court says: " The doctrine seems to be established by authority that the conduct and admissions of a party operate against him in the nature of an estoppel, wherever, in good conscience and honest dealing, he ought not to be permitted to gainsay them. Thus, negligence becomes constructive fraud—although, strictly speaking, the actual intention to mislead or deceive may be wanting, and the party may be innocent, if innocence and negligence may be deemed compatible. In such cases, the maxim is justly applied to him, that *when one of two innocent persons must suffer, he shall suffer who by his own* acts occasioned the confidence and loss." " In the last sentence," says Prof. Pomeroy, " the judge has struck the *bed rock of universal principle* upon which all instances of equitable estoppel must be founded, if they are to stand with any firmness." And see *2 Herm. Estop.* § *772*.

Ruckelschaus *v.* Oehme.

With regard to the last element of estoppel relied upon here— silence—I think it is also clearly made out. Leaving out of view the things said and done by Mrs. Oehme which came to complainant's knowledge, I think the circumstances above stated cast upon her the duty of speaking and making known her demand to complainant. She is chargeable with, *first*, knowledge of her own rights, and, *second*, that complainant was acting in ignorance of them in paying the rent in question to the heirs of McCulloch, and the result of her silence is that complainant has paid away his money and will incur risk and trouble in recovering it.

That mere silence will, under certain circumstances, create an estoppel is well settled. *Sumner* v. *Seaton, 2 Dick. Ch. Rep. 103*, and cases there cited, and see other cases collected in *2 Pom. Eq. Jur.* in *note to* § *808;* and in this state a striking example in *Society* v. *Lehigh Valley R. R. Co., 5 Stew. Eq. 329; 2 Herm. Estop.* § *938.*

For these reasons I am of the opinion that the demurrer should be overruled and the injunction issued.

Some criticisms were made at the argument on the frame and verbiage of the bill. I think that none of them, even if well taken, are available to the defendant under the frame of his demurrer.

Among other things, it was suggested that the offer in the law court of proof of the facts out of which the estoppel arises did not include all those set out in the bill, and hence that this court cannot say that if complainant had made a complete offer it would not have been admitted. But, in the first place, I am unable, upon a careful reading of the bill, to discover any omission in the statement of the offer of proof. It was evidently the intention of the pleader to allege that all the facts were included in the offer. The affidavit of the complainant so states. And we must read the bill in the light of the fact that the same judge presided at the trial of the action for mesne profits who had tried the action of ejectment, and was familiar with the facts. If the bill is defective in this respect it may be amended. In the second place, it is clear that the learned judge did not overrule the evidence on account of lack in quantity—that some necessary link

in the chain was wanting—but on the ground of its general quality and tendency.

The bill does not allege in direct terms that Mrs. Oehme knew that complainant was occupying the premises as tenant, and was paying the rent to the heirs of McCulloch, but it alleges facts from which such knowledge is fairly to be presumed. See, in this connection, *Rorback* v. *Dorsheimer, 10 C. E. Gr. 516* (at *p. 518*). The bill would be more complete as a pleading if amended in this particular.

So with regard to the deed from Mrs. Oehme to McCulloch. It is, perhaps, not set out in accordance with its tenor and effect with sufficient fullness. Nor does complainant offer to assign to defendant his right of action against the heirs and personal representatives of McCulloch. If in either of these respects the complainant shall desire for the purpose of the further progress of the suit to amend his bill, he may do so upon terms of not demanding costs on the demurrer.