The facts recited in the petition, undisputed on this motion, are that final decree was entered in the foreclosure proceeding for $11,232.73 on February 13th, 1935, pursuant to which the mortgaged premises were sold by the sheriff of Essex county on April 23d 1935, to the complainant on his nominal bid of $100. The sale was confirmed without objection on May 4th, 1935. (Chapter 88, P.L. 1935, approved March 22d 1935, was then apparently the law of this state. Upon it the defendant had a right to rely, presuming its validity.) On May 24th, 1935, complainant instituted suit at law in the Essex county circuit court for an alleged deficiency arising out of the foreclosure and sale. On June 6th, 1935, the defendant filed an affidavit of merits and on June 20th, 1935, a stipulation was entered into between the attorneys for plaintiff and defendant under the terms of which the complaint was amended and the time to answer extended to June 24th, 1935, on which date the defendant filed its answer, setting up two separate defenses under chapter 88,P.L. 1935, demanding determination by a jury of the fair market value of the premises foreclosed and a set-off of such fair valuation against the deficiency claim. On July 10th, 1935, notice of a motion to strike the answer was served upon counsel for the defendant in the law action and the motion argued on July 26th, 1935, when an order was entered striking the answer on the ground that chapter 88, P.L. 1935, was unconstitutional on the authority of Sayre v. Duffy, 13 N.J. Mis. R. 458; and a deficiency judgment for $11,795.45 was accordingly entered forthwith. As the decision of the Essex county circuit court inSayre v. Duffy was not officially reported until June 15th, 1935, it is conceivable that counsel for the defendant in the law action, who also represents the petitioner here, may not have known of this decision when his answer was filed. The affidavits on this motion are silent on this point. *Page 29 
The present petition was filed on August 9th, 1935, and prays that the order confirming sale in the foreclosure proceedings be vacated and a resale ordered; or, in the alternative, that the fair value of the mortgaged premises be credited upon the deficiency judgment and that enforcement of said judgment unless and until the said credit is given be restrained. The petitioner also alleges that the property has a fair value of $15,000; his inability to obtain a loan or refinance the mortgage which was the subject of foreclosure because of the existence of a financial emergency, and other jurisdictional facts mentioned inYoung v. Weber, 117 N.J. Eq. 242; also that in January, 1933, petitioner assigned to the complainant stock in the complainant association having a par value of $750, and again, in January, 1934, stock having a par value of $510 in said association, which was applied on account of the arrearages of installments and interest then due; and offered and still offers prepaid stock in said association of the par value of $4,000 on account of principal, arrearages, c. None of these facts are controverted on this motion.
On the present motion counsel for complainants rely uponFruzynski v. Jablonski, 117 N.J. Eq. 117, and Broadman v.Colonial Building and Loan Association, 118 N.J. Eq. 275. It is also claimed that the petitioner's appeal to this court is premature, as he has not exhausted his remedies in the law courts by appeal to the court of errors and appeals from the order striking his answer. Also that under section 64 of the Chancery act (1 Comp. Stat. p. 434), this court has no power to stay proceedings at law after judgment "unless a sum of money shall be first deposited with the court or unless such applicant shall give such security by bond, as the chancellor shall deem good, in double the amount due on such verdict or judgment and the costs at law, with condition to abide such order or decree as the chancellor shall make in the premises," and that petitioner has not complied with this requirement of the statute. I will dispose of the grounds upon which this motion is rested in the inverse order of their statement. *Page 30 
The statute (section 64, Chancery act) was not intended to apply to cases of this kind and will not be applied where inequity will result. Meranus v. Lawyers and HomemakersBuilding and Loan Association, 116 N.J. Eq. 402, 406.
On the question as to whether or not the petition is premature I think it may well be said that in view of the decision of the court of errors and appeals in Vanderbilt v. Brunton PianoCo., 111 N.J. Law 596, in which chapter 82, P.L. 1933 (an act having for its object the accomplishment of the same end for which chapter 88, P.L. 1935, was designed) and in view of the decision of the Essex county circuit court in Sayre v. Duffy,supra, and the action of the same court in striking petitioner's answer in the law action here involved, the petitioner was not only acting within his rights but pursuing his plain duty in promptly applying to this court for relief upon his answer in the law action being stricken. Further justification for the petition may be found in the recent decision of the supreme court inFidelity Union Trust Co. v. Bryant, 14 N.J. Mis. R. 243, in which chapter 88, P.L. 1935, is again declared unconstitutional as an impairment of the obligation of a contract entered into prior to its enactment. (The bond and mortgage here involved antedated chapter 88, P.L. 1935). Until the decision of the Essex county circuit court on the motion to strike petitioner's answer filed in the law action, the petitioner had a right to rely upon the remedy provided in chapter 88, P.L. 1935, and was justified in interposing that act as a defense and claiming the benefit of its provisions in order to obtain a credit of that to which he was equitably entitled and expressly reserved to him by the act in question, namely, a credit on the deficiency claim of the amount of the fair value of the foreclosed premises.
By section 2 of chapter 88, P.L. 1935 p. 261, the recovery of a judgment for deficiency on foreclosure "shall open the foreclosure and sale of said premises" and the judgment debtor "may redeem." It is further provided that the subordinate liens are not thereby revived and that a suit for redemption must be brought within six months after the entry of judgment. It would seem that both the foreclosure and *Page 31 
sale should be considered as open for the purpose of redemption. The act contains the further provision that the filing of an answer disputing the amount of the deficiency shall terminate the right to redeem and the entry of a judgment shall not open the foreclosure and sale. But if this answer is unavailing by virtue of the unconstitutionality of the act in whole or in part then the right to redeem remains as before the act; or if that part which says that foreclosure and sale is open is not invalid, the foreclosure and sale are open for all purposes, to redeem or to apply to a court of equity for relief. The original statute (3Comp. Stat. p. 3422 § 49) provides that upon recovery of a deficiency judgment "such recovery shall open the foreclosure and sale" for purposes of redemption. That the delay in applying to this court for relief until after sale and confirmation and the institution of a suit for a deficiency in the law courts is not fatal, see Fidelity v. Petchensky, 119 N.J. Eq. 514. In that case final decree was entered April 23d 1935; foreclosure sale held June 25th, 1935, and sale confirmed July 6th, 1935. A deficiency suit was instituted at law on September 13th, 1935. The petition in the court of chancery was signed October 4th, 1935. It was there objected that the order confirming sale could not be opened after the expiration of forty days. Vice-Chancellor Bigelow in a well considered opinion held that irrespective of whether or not the order confirming the sale was an interlocutory order or a final decree, where special equities existed all that was necessary was that the application to reopen be made within a reasonable time and what would be a reasonable time would depend upon the facts in each particular case. He also held that the grounds for refusing confirmation of a sale which were set out inYoung v. Weber, supra, constituted a special equity warranting the granting of equitable relief in this court. As already suggested, the present petition contains allegations of the special equities mentioned in Young v. Weber. Obviously, the entry of the judgment here was due to the fact that the equitable defenses provided by statute and interposed in the law action were held unavailable at law. But the entry of a deficiency judgment *Page 32 
at law is no bar to equitable relief. There are certain classes of judgments at law from which the law courts could never grant relief. It was this impotency, inherent in the law courts, which gave rise to the equitable, as distinguished from the legal, jurisdiction of the court of chancery. But it is peculiarly the province of equity to relieve from the injustice of strict rules of law. In the early history of the court of chancery in England this power to enjoin the enforcement of unjust judgments at law was the cause of much heated controversy between the judges of the law courts and the chancellor. The frequency with which Lord Chancellor Wolsey exercised the power was one of the items of charge in his impeachment proceedings. Sir Thomas More was also criticised for the same reason, but upon an issue between him and the law judges these judges were obliged to admit that he was right and that he "could have done no-otherwise." The culmination of this controversy came when Lord Chief-Justice Coke and Lord Chancellor Ellesmere crossed swords and it resulted in Lord Coke's loss of his office and the subsequent elevation of Sir Francis Bacon, then attorney-general, to the chancellorship. But more important, the jurisdiction and power of the court of chancery to restrain the enforcement of unjust judgments at law were so firmly established that they were never thereafter questioned in England.
That famous controversy arose from the jealousy between the courts of law and those of equity for which in this state there is no conceivable basis. Then both the courts of law and of equity used every means in their power to extend their respective jurisdictions because the compensation of the judges depended upon court fees. The broader the jurisdiction — the larger the court's business — greater the emoluments of the judges. No such basis for jealousy between the courts of law and of equity exists here.
The questioned jurisdiction of the court of chancery thus firmly established was undoubted at the time of the separation of the American colonies from the mother country and the adoption of our first constitution. By that fundamental law it became inherent in the court of chancery of New Jersey and it was perpetuated by our constitution of 1844. *Page 33 
The general jurisdiction of American courts of equity to restrain the enforcement of judgments at law upon equitable grounds is stated in 2 Story Eq. Jur. (11th ed.) ¶ 1573, as follows:
"In matters where the jurisdiction of the courts of law and equity is entirely concurrent, the adjudication of the court of law is conclusive upon courts of equity. And a court of equity will not interfere to relieve a party from such adjudication except upon the ground of newly discovered matter since the trial; of fraud in obtaining the judgment; or of some inevitable accident or mistake. But where the party has equitable rights, not cognizable in a court of law, which would in a court of equity have prevented such an adjudication as was made in the court of law, the judgment will interpose no obstacle to redress in equity, since the court of law had no proper jurisdiction of the subject-matter forming the basis of redress in equity."
And see 4 Pom. Eq. Jur. (4th ed.) ¶¶ 1364, 1365, and 5Pomeroy ¶¶ 2068, 2095. In paragraph 1364, after discussing this jurisdiction, Professor Pomeroy says, "from the very nature of the case this interference takes place after the judgment andnot while the action at law is pending." In Hubbard v.Eastmen, 47 N.H. 507, it is said that any fact which proves it to be against good conscience to execute a judgment, and of which the injured party could not have availed himself in the court rendering the judgment as a defense against the action, or where he was prevented from so doing by fraud or accident, unmixed with any fault or negligence on his part, will justify the interference of a court of equity.
The existence of this jurisdiction and power in the court of chancery in New Jersey has been frequently recognized both in this court and in the court of errors and appeals. Hughes v.Nelson, 29 N.J. Eq. 547; Smalley v. Line, 28 N.J. Eq. 348;Borcherling v. Ruckelshaus, 49 N.J. Eq. 340; Headley v.Leavitt, 65 N.J. Eq. 748. In Headley v. Leavitt, supra, the fourth syllabus is as follows:
"Where an equitable defense to such an action fails only because it was not cognizable in the law court, such result will be no bar to the action of a court of equity, in applying such equitable remedy to the relief of a defendant by enjoining thecollection of the judgment recovered in such action." *Page 34 
That was the unanimous decision of the court of errors and appeals in 1903. The latest case asserting this jurisdiction in the court of chancery is Palisade Gardens, Inc., v. Grosch,120 N.J. Eq. 293.
See, also, Boulton et al. v. Scott, 3 N.J. Eq. 231;Executors of Powers v. Butler, 4 N.J. Eq. 465; Cairo and FultonRailroad Co. v. Titus, 27 N.J. Eq. 102 (reversed, 28 N.J. Eq. 269,
but "principle upon which courts of equity give relief against judgments at law," as stated in opinion below, approved);Holmes v. Steele, 28 N.J. Eq. 173; The Mayor and Aldermen ofJersey City v. Fitzpatrick, 30 N.J. Eq. 97; Sanders v.Wagner, 32 N.J. Eq. 506; Cutter v. Kline (Court of Errorsand Appeals), 35 N.J. Eq. 534; Dringer v. Receiver of ErieRailway, 42 N.J. Eq. 573; Phillips v. Pullen, 45 N.J. Eq. 5;affirmed, Id. 830; Sumner v. Seaton, 47 N.J. Eq. 103;Ruckelschaus v. Oehme, 48 N.J. Eq. 436; affirmed, 49 N.J. Eq. 340; Herbert v. Herbert, 49 N.J. Eq. 70; affirmed, 49 N.J. Eq. 565; Wilson v. Anthony, 72 N.J. Eq. 836; affirmed, 75 N.J. Eq. 299; Clark v. Board of Education, 76 N.J. Eq. 326; Gallagher
v. L. and B. Eagle Brewing Co., 86 N.J. Eq. 188; Young v.Stickley, 88 N.J. Eq. 251; Commercial Trust, c., Bank v.Hamilton, 99 N.J. Eq. 492; affirmed, 101 N.J. Eq. 249; Sunion
v. Henke, 102 N.J. Eq. 115; C. and D. Building Corp. v.Griffiths, 109 N.J. Eq. 319; Giehrach v. Rupp (Court ofErrors and Appeals), 112 N.J. Eq. 296.
The motion to dismiss is denied. *Page 35